## Duffin v. Commonwealth.

(Decided April 21, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Attorney and Client—When Court May Disbar Attorney, Stated. —In a proper proceeding, set in motion by the attorney for the Commonwealth, after due notice to accused attorney and a fair hearing, the court may, upon evidence establishing accused's lack of honesty, probity, or good moral character, disbar him.

2. Attorney and Client—Mere Nonpayment of Funds Collected by Attorney for his Client is Not Ground for Disbarment, in Absence of Fraud or Dishonesty in Retention of Funds.—Mere nonpayment of funds collected by attorney for his client is not ground for disbarment, in absence of fraud or dishonesty in retention of funds.

3. Attorney and Client—Disbarment Authorized in Common-Law Proceeding for Failure to Pay Over Funds Notwithstanding Prescribed Statutory Remedy.—Where an attorney has failed to account for funds collected for his client, proceeding authorized by Ky. Stats., section 104, limiting punishment for such conduct to suspension from practice for twelve months and until the money is repaid, is not exclusive, but the attorney may be disbarred in a common-law proceeding.

4. Attorney and Client—Attorney is Answerable in Damages for his Carelessness and Negligence.—Attorney is answerable in damages for his carelessness and negligence.

5. Attorney and Client—Lack of Honesty, Probity, or Good Moral Character is Ground for Disbarring Attorney.—Lack of honesty probity, or good moral character is ground for disbarring attorney.

6. Attorney and Client—Showing Held Insufficient to Sustain Suspension of Attorney from Practice.—Where an attorney was suspended from practice for one year for failure to turn over funds collected for clients, judgment would not be sustained where there was no proof of demand of payment and no evidence of fraud or dishonesty.

BECKHAM, HAMILTON & BECKHAM, WOODWARD, WARFIELD & DAWSON, MERIT O'NEAL and EDWARD P. HUMPHREY for appellant.

L. D. GREENE and W. CLARKE OTTE for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Upon an information filed by the Commonwealth's attorney, supported by certain affidavits and exhibits, a rule issued on February 5th, 1925, from the Jefferson circuit court, common pleas branch, first division, against appellant, James R. Duffin, an attorney at law, to show cause why he should not be disbarred. The disbarment proceeding was founded upon the charge that appellant had collected and failed to account for certain moneys due certain of his clients. Upon the trial of the pro-. ceeding a judgment was entered suspending him from the practice of law in any of the courts of the Commonwealth for a period of one year. This appeal is prosecuted from that judgment.

It is conceded, of course, that courts possess the inherent power for proper cause shown to disbar an attorney. Before being granted a license to practice law in Kentucky, it is very properly required that an applicant shall be possessed of honesty, probity and good moral character. To continue to enjoy the privileges of the profession a lawyer must maintain those qualities of character. In fact, it would seem more important that his good character in those particulars be preserved after entering upon the practice of law than that he possess it when admitted to practice. In a proper proceeding, set in motion by the attorney for the Commonwealth,

after due notice to the accused and a fair hearing, the court may, upon evidence establishing his lack of honesty, probity or good moral character, disbar an attorney. Rice v. Commonwealth, 18 B. M. 472; Baker v. Commonwealth, 10 Bush 592; Walker v. Commonwealth, 8 Bush 86; Commonwealth v. Richie, 114 Ky. 336, 24 Ky. L. R. 1077, 70 S. W. 1054; Underwood v. Commonwealth, 105 S. W. 151, 32 Ky. L. R. 32; Nelson v. Commonwealth, 109 S. W. 337, 33 Ky. L. R. 143; Commonwealth v. Roe, 129 Ky. 650; Bradley v. Fisher, 80 U. S. 335, 20 L. Ed. 646; Ex Parte Burr, 9 Wheat. 529, 6 L. Ed. 152.

The only particular in which the character of appellant, James R. Duffin, was attacked, either in the information and affidavits upon which the rule was issued or in the testimony in this record, was with relation to his withholding and failing to account for funds belonging to his clients that had been collected by him. We find that a great many cases both in this court and in other courts of the land have dealt with that question as it relates to disbarment proceedings.

The general rule with reference to the question is thus written in 6 C. J. 591:

"Whether so provided by statute or not, it is always a ground for the disbarment of an attorney that he has misappropriated the funds of his client, either by failing to pay over money collected by him for his client or by appropriating to his own use funds intrusted to his care, provided the circumstances attending the transaction are such as to satisfy the court that the attorney is acting in bad faith or with a fraudulent purpose. Mere nonpayment of money, not accompanied with any fraud or dishonesty, is not sufficient ground for disbarment."

In 2 R. C. L., page 1095, the rule on the question is thus written:

"One of the most frequent grounds of disbarment of attorneys is the wrongful retention, misappropriation or misapplication of money or property received by them in their professional character. . . . It has been held, however, that to constitute a wrongful retention of money sufficient to warrant disbarment, some element of fraud or dishonesty must appear. In other words, mere nonpayment of money by an attorney is insufficient as

a ground for disbarment, in the absence of fraud
or dishonesty in the retention of the money.''

By reference to the general principles quoted above,
it will be observed that an essential element, entering
into the retention and delay in accounting for the funds
of his client as grounds for disbarment, is that fraud
or dishonesty must appear. There must be some evi-
dence that the attorney intends to profit to the hurt of
his client. As was said, mere nonpayment is insufficient
as grounds for disbarment, in the absence of fraud or
dishonesty in the retention of the money.

The question has been the subject of legislative en-
actment in Kentucky. Section 104, Carroll's Kentucky
Statutes, 1922, provides:

"If any attorney-at-law shall collect the money
of his client, and, on demand, wrongfully neglect
or refuse to pay over the same, the circuit court of
the county in which the money may be collected,
shall, after notifying the attorney to show cause
against the same, suspend him from practice in
any court for twelve months, and until the money
shall be paid. Before any such motion shall be en-
tertained, a demand of the money shall be made of
such attorney in the county of his residence.''

It will be observed that under the provisions of that
section of the statutes the utmost limit of punishment
that can be meted out to an attorney for failure to pay
money due his client is suspension from practice for
twelve months and until the money shall be paid. It will
further be observed that the legislature in dealing with
the question, although it so limited the punishment, in a
case where the attorney has collected money of his client
and has failed to account for same, prescribes that be-
fore the proceeding may be instituted the client must
have demanded payment of the attorney. The attorney
must wrongfully neglect or refuse to pay after demand.

This is not a proceeding under section 104, *supra,*
but is a proceeding at common law for the disbarment
of an attorney. In Commonwealth v. Roe, *supra,* the dis-
tinction between a proceeding under section 104 and a
proceeding such as is this was clearly pointed out; and
the fact that section 104 is not the exclusive remedy on
the question was determined. In concluding that opin-
ion, in holding that the proceeding under section 104

is not the exclusive remedy in cases where an attorney has failed to account for money collected for his client, the rule as to disbarment at common law was written in this language:

> "But, with reference to the particular matter before us, we have no hesitation in saying that an attorney who intentionally and wrongfully withholds after demand money he has collected for his client is guilty of such misconduct as shows him to be unworthy to be a member of the legal profession or an officer of the court, and authorizes in a proper proceeding his disbarment."

In the very recent opinion of this court, in Bonner v. Goodloe, 205 Ky. 555, the rule as to what state of case will authorize either the suspension of an attorney in a proceeding under section 104, *supra,* or the disbarment of an attorney under the common law proceeding, was written by this court in these words:

> "An attorney was, under the common law, subject to suspension or disbarment for the wrongful retention of money collected for his client, and our statute, *supra* (section 104), seems not to have changed that rule but only fixed a definite suspension, *i. e.,* one year and until payment was made, but under that rule nonpayment alone is not sufficient cause for either suspension or permanent disbarment since the general rule is as stated in 6 C. J. 592, 'Mere nonpayment of money, not accompanied with any fraud or dishonesty, is not sufficient ground for disbarment.' And it must be remembered that our statute as well as the common law rule requires that the attorney shall 'wrongfully neglect or refuse to pay over the same,' which implies the element of intentional misconduct, and necessarily excludes a refusal based upon a good faith belief of the attorney's right to retain the sum demanded; and that interpretation has been recognized and applied by this court in the two cases of Hendrick v. Posey, 20 Ky. L. R. 359, and Commonwealth v. McKay, 14 Ky. L. R. 407, and perhaps others."

We may say further that a proceeding either to suspend or disbar an attorney has uniformly been regarded by the courts as one of gravest importance. It is of gravest importance to the attorney whose right to prac-

tice his profession is involved, and to the courts charged with the solemn duty of maintaining the highest standard of honor and integrity, not only of the courts but also of all their officials. As the proceeding affects the attorney in question, courts must bear in mind that they are dealing with his profession, with his means of livelihood and with his character and honor. A judgment either disbaring or suspending an attorney from practice not only deprives him of the right to practice his profession, his means of earning money, but also brands him as a person unworthy of trust or confidence in any of the transactions of life. Therefore, as said by the Supreme Court of the United States, in Bradley v. Fisher, 80 U. S. 335, 20 L. Ed. 646:

> "It is a power which should only be exercised for the most weighty reasons, such as would render the continuance of the attorney in practice incompatible with the proper respect of the court for itself or a proper regard for the integrity of the profession."

In Ex Parte Burr, 9 Wheat. 168, Mr. Chief Justice Marshall, writing for the court, said:

> "On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend upon its exercise. On the other hand, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects some controlling power, some discretion ought to reside in the courts. This discretion ought to be exercised with great moderation and judgment; but it must be exercised, and no other tribunal can decide in a case of removal from the bar, with the same means of information, as the court itself."

Keeping the foregoing principles of law relative to the question in mind and approaching this case with that sense of its importance, both to the appellant and to the courts and to the profession, uniformly accorded such cases by the courts, we find the following in brief to be the facts introduced to authorize and upon which the trial court entered a judgment suspending appellant from practicing his profession for a period of one year: Appellant, James R. Duffin, has been a practicing lawyer

of the Louisville, Kentucky, bar for some 26 years. A number of years ago he organized a corporation to do commercial collecting, known as the Attorneys' Mercantile Agency Company. He has been the president of that corporation since its organization and has drawn a salary as such. For a number of years following its organization he gave his personal attention to the business of the corporation. For some ten or twelve years prior to the institution of this disbarment proceeding against him, it appears from the record that, although he has been the president of the corporation, he has not given its affairs his personal attention but that its business has been in charge of other officers and agents. The evidence discloses that all the money collected by that corporation for its clients has been deposited to the credit of the corporation in the bank with which it has done business and that the corporation without exception has kept accounts in such a way as to show in detail all its various transactions. It appears that at times money collected by it for its clients on accounts placed with it for collection has not been promptly remitted. The affidavits filed upon which this proceeding was predicated relate to 125 claims alleged to have been collected and wrongfully withheld by appellant's collection agency. The evidence discloses that in the course of the corporation's business it had on hand at all times from six thousand to fifteen thousand live files. It was established by proof as to a portion of the 125 claims in question that after collection of the amount due on these claims settlements were not promptly made with claimants, the delay in the various cases differing and in some instances being as much as three or four years. As before stated, it does not appear from the record that appellant had any personal connection with the handling of this business. The practice seems to have been when claims were collected that the bookkeeper of the corporation would fill out a check payable to the claimant for the net amount of the claim due him, to attach the check to a folder containing all the data with reference to the account and place it on the desk of one of the executive officers of the corporation. Necessarily the mailing out of the check to the claimant would be delayed until the check received in settlement of the claim had been reported as paid, it having been deposited to the credit of the corporation when received. At times it appears that, due to the operating expenses of the corporation, there were not sufficient funds on hand to mail out to all claimants the

funds due them and in that way the delay in mailing out the checks occurred. It appears from the testimony that in some two or three instances, including the accumulation of unaccounted for collections made the basis of the charges herein, the attention of appellant, James R. Duffin, was called to that fact, and in each instance he supplied from his personal funds the money with which to settle all collected accounts. There is in the record no evidence of demand of payment of any of the sums due on the accounts made the subject of this proceeding. Recognizing that demand of payment was an essential element, the information filed against appellant alleged that payment of these funds had been wrongfully refused by him after demand. There is a total failure of proof as to any of the items in controversy that demand had ever been made. There is a total failure of proof to establish that James R. Duffin, or the corporation of which he was the president, was guilty of any fraud or dishonesty in connection with the nonpayment of the money due his or its clients. There was no evidence which tended to establish that in failing promptly to mail out the checks to claimants for whom collections had been made there was any intention or attempt upon the part of appellant or his collection agency to defraud claimants or to misappropriate their money. The trial court, in the opinion rendered by him, makes that perfecty clear in this language:

"I don't think that Mr. Duffin's attitude has been willful. I don't think it has been with a wrongful intention. We may say that it has been negligent. I think it goes beyond the point of negligence, that it is more than negligence. I hardly know what term to apply to it, but it is something beyond negligence, and something considerably less than criminality. It may be called gross negligence."

Having by this opinion found in the record acquitted appellant of any willful, wrongful intention, and having found his actions in the matter to be far short of criminality, and at most grossly negligent, the learned trial judge, however, proceeded to inflict upon him the punishment provided only for those guilty of intentional fraud or dishonesty in connection with a transaction of this sort.

We cannot approve the careless way in which appellant's corporation has transacted its business, but carelessness or negligence—even gross carelessness or

negligence—has never been considered by the courts as grounds for the disbarment of an attorney. We never approve the carelessness and negligence of attorneys in the preparation and trial of a great many of the actions that come to this court for review. However, no court has ever held that for such a reason an attorney should be disbarred. Carelessness and negligence, want of skill and ability manifest themselves and carry with them their own punishment. They repel rather than attract clients for an attorney. For carelessness and negligence an attorney is answerable in damages. An attorney may be disbarred only when it is made to appear that he is lacking in honesty, probity or good moral character. In so far as these requisite qualities of character are affected by his handling of his client's funds, the principle has long been established and adhered to by this court that mere nonpayment, not accompanied with fraud or dishonesty, is not sufficient. The neglect or refusal to pay over the money must be wrongful and be possessed of the element of intentional misconduct. As a guide to determine the question the legislature, as above pointed out, has provided that in the instances where under its enactment an attorney is sought to be suspended for a year demand first must be made and a wrongful neglect or refusal to pay must follow the demand. The rule with reference to disbarment proceedings growing out of an attorney's failure to account for funds collected for his client, as written in the Roe case, *supra*, and the Bonner case, *supra*, set the same standard for determining the question. The neglect to pay or refusal to pay must be wrongful and subsequent to demand. The attorney's intent is to be gathered from his actions after demand.

There is a total failure of proof of demand of payment in this case. The attention of appellant having been called to the fact that some of the accounts of clients of the corporation of which he was president which had been collected had not been paid, he, from his personal funds, provided the means with which to do so. All claims were settled before demand and before the institution of this proceeding. No client of the corporation is shown to have lost anything. Its books were so kept that the status of each of its files could be ascertained at any time. There is no evidence of fraud or dishonesty upon the part of appellant. The learned trial judge by his opinion acquitted appellant of all intentional wrongdoing in the premises and yet suspended him from the practice of his profession.

It follows from the foregoing that the judgment herein is erroneous and it is reversed, with direction that the proceeding against appellant be dismissed.

The whole court sitting.