### UNITED STATES v. HICKS.

### In re EWELL.

Circuit Court of Appeals, Ninth Circuit.

No. 5269.

Raine Ewell, of San Francisco, Cal., in pro. per.

George J. Hatfield, U. S. Atty., and Geo. N. Crocker, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a judgment or final order unconditionally disbarring appellant, an attorney at law. It comes to us under the title of "Raine Ewell vs. Hon. A. F. St. Sure, as U. S. District Judge," etc., but the only relief sought is a reversal of the judgment, and the only relation the appellee so named has to the controversy arises out of the fact that as such judge he presided at the trial and entered the judgment. The title we have used is found in some of the papers and is perhaps as appropriate as any for a proceeding which, as will be seen, is somewhat anomalous. Upon the brief filed in resistance to the appeal the United States District Judge and the United States District Court are named as appellees, and the brief is presented upon their behalf by the United States District Attorney, who, apparently, did not participate in the trial below, but, as we infer from statements made at the argument, came into the case after judgment, upon the request or under the direction of the presiding judge.

Of the treatment he received in his efforts to have a bill of exceptions settled, the appellant makes vigorous complaint. He represents that within the time allowed he prepared and served upon all parties who could be supposed to have any interest a proposed bill of exceptions, but instead of settling this bill either as proposed or with modifications, the presiding judge ignored it and caused an entirely new bill to be prepared which, without notice to appellant or giving him an opportunity to propose amendments, he settled and certified. And, subsequently, long after the time for proposing or settling a bill had expired, upon motion of the District Attorney, the judge authorized amendments to the bill thus prepared and certified by him. The substantial correctness of these representations is hardly questioned by the District Attorney and, indeed, is to be inferred from the recitals in the presiding judge's certificate. Logically, the questions arising out of the seeming irregularities should first be disposed of, but their bearing cannot well be understood without an explanation of certain conditions and occurrences touching which there is no substantial controversy; and inasmuch as we conclude there are other considerations which are controlling in the disposition of the appeal, whatever view be taken of these questions of procedure, it is not deemed necessary to decide them.

It seems that in April, 1926, one John L.

Hicks was held in custody under an indictment charging him with violations of the White Slave Traffic Act; and his wife also was detained in jail as a witness against him. On or about the 20th of April, Thomas L. Riordan, an attorney at law, was employed to give them legal assistance, and, through Mrs. Hicks, he was at that time paid $600, with the agreement that an additional sum of $400 would be paid. Upon the general subject of the use to which the money was to be put and what Riordan was to do with or for it, there was conflicting testimony; Mrs. Hicks contending that he was to use part of it in procuring bail, and that for such portion thereof as was intended for his compensation he agreed to "beat the case" against her husband.

However that may be, bail was not procured, and against the urgent advice of Riordan, Hicks declined to plead guilty but insisted upon having a trial. Apparently Riordan was unwilling, or at least exhibited great reluctance, to defend him, and finally, on or about May 7th, so he testified, he informed Hicks that if the latter wanted another attorney he could get one and that he (Riordan) would let the other $400 go; but he was unwilling to pay back any part of the $600. Dissatisfied with Riordan's services, particularly because of his insistence upon a plea of guilty, Hicks sought the aid of other counsel and finally engaged appellant herein. After getting from Hicks and his wife their version of what had occurred, and particularly of the conditions and terms under which the $600 had been paid, appellant took the matter up with Judge St. Sure, with a view to having Riordan return at least a part of the money he had received. At Judge St. Sure's suggestion, so he testified, he communicated with Riordan, but the latter declined to pay back any of the money. A short time thereafter, on May 26, 1926, he appeared in open court and asked leave to file a notice entitled in the criminal case and signed by Hicks, advising the court officers and Riordan that he (Hicks) had discharged Riordan and appointed the appellant herein as his attorney. In the notice were these paragraphs:

"Said discharge is made on the ground that said Thomas J. Riordan wrongfully obtained $600.00 from the wife of this defendant through misrepresentation and fraud and in part payment of premium on bail and to defend the prosecution of this case.

"That thereafter said Thomas J. Riordan, after receipt of the $600.00, importuned this defendant to plead guilty when this defend-ant had, under said attorney, pleaded not guilty."

The inclusion of the first of these paragraphs, and particularly the words "wrongfully" and "through misrepresentation and fraud," constitutes the misconduct and the only misconduct upon which the court below rested the judgment of disbarment.

Riordan was in court at the time the application was made and objected to the filing of the notice upon the ground that it unjustly reflected upon his honor and integrity. What was said in the ensuing colloquy is left in doubt, but admittedly the court did not then permit the notice to be filed and set something down for hearing on June 1st. At that hearing, which consumed parts of three days, a considerable volume of evidence was introduced, at the close of which the court ordered entry of the judgment under consideration. It is the appellant's contention that up to a time shortly before the hearing closed, he assumed that the only matter involved was the question of Riordan's discharge and his obligation to pay back the $600, or a portion thereof; whereas, the District Attorney's position is that he had knowledge from the beginning that the proceeding was also for his disbarment. It is not pretended that any charge, formal or informal, was ever filed against appellant or that he was ever advised in terms or clearly that the purpose or one of the purposes of the hearing set for June 1st was to determine whether he should be disbarred. If we resort to the ex parte bill of exceptions, we find a recital only that, after the colloquy on May 26th, in respect of the application to file the notice, in the course of which Riordan charged appellant with misconduct and unethical practice, the court examined the notice and "advised said Raine Ewell that he would have opportunity to make a showing of the truth of the facts stated in the notice and in defense of said charge of misconduct and unethical practice." It is not contended that this precise language was used, for no reporter was present, and as appears from the certificate of the presiding judge made a month later, what occurred rested in his recollection, to some extent possibly aided by notes taken in the course of the trial. But accepting the recital as it stands, it conveys no clear intimation that appellant was to be put on trial looking to his disbarment. He was in court seeking relief for his client who was in jail charged with a criminal offense. That relief in part depended upon a substantiation of the charges in the document he had asked leave to file. He may

well have understood, and we are inclined to think he did proceed upon the assumption, that the only purpose of the hearing was to determine whether his client was entitled to the relief sought, to procure all of which relief he would have to substantiate the grounds stated in the notice. It is suggested that Hicks was entitled to substitution of counsel without assigning reasons for the change, but with respect to the right of Riordan to retain the $600, it would be one thing to discharge him arbitrarily and quite another to displace him because of his inability or unwillingness to comply with his contract of employment. The Flush (C. C. A.) 277 F. 25, 28. And in that regard it is not without significance that he did not announce his withdrawal from Hicks' defense before or at the opening of the hearing but only after the evidence was all in.

Manifestly, the clerk did not understand that the order made at the close of the colloquy on May 26th was for a hearing looking to appellant's disbarment, for the only minute entry on that day was under the caption of the criminal case against Hicks and is as follows: "Now comes Raine Ewell, Esquire, and presents a notice of discharge of the attorney for the defendant. After hearing had, it was ordered that said application to discharge attorney be placed on the calendar for June 1, 1926, for hearing." And on June 1st, under the same caption, we find this entry: "The application of the defendant to discharge his attorney came on to be heard. Raine Ewell, Esquire, appeared in support of the application. Thomas J. Riordan, Esquire, appeared in opposition thereto." On the following day, to which the hearing was continued, a similar entry was made. The minute entry of June 3d opens thus: "The defendant's application to discharge his attorney came on further to be heard. After argument by Raine Ewell, Esquire, the said application was submitted to the court for consideration and decision." And thereupon the minutes state that having found appellant guilty of misconduct, the court ordered his disbarment, and that Riordan having suggested acceptance of his discharge, the court granted defendant's application to discharge him. In short, the first intimation in the minutes that appellant's disbarment was involved is to be found in the court's announcement of his final decision.

██ Under the circumstances, appellant as a lawyer would naturally be slow to infer from the general language above quoted from the recital in the ex parte bill of exceptions, or to believe, that it was the intention of the court to put him on trial for disbarment. He had come into court asking for relief on behalf of his client. The court did not grant his application but set it for hearing on June 1st. That this application was so entertained and set for hearing by the court admits of no doubt, and at the same time to have compelled appellant to go to trial upon a charge looking to his disbarment would have been such a manifest impropriety, there is little wonder he failed to understand such a course was contemplated. The two proceedings would have been distinct and measurably incongruous. In the one appellant as attorney for Hicks would have the affirmative, while in the other he would be in the position of a defendant. Had he been formally charged, and thereupon advised that the charge would be tried together with the application he was making for his client, it is doubtful, to say the least, whether with propriety he could have continued to represent Hicks. His paramount interest would have been in his own behalf, whereas his paramount duty was to his client, and hence there would have been grave danger of his serving one to the neglect of the other. Manifestly there was no call for precipitate disbarment proceedings, by which appellant would be thus embarrassed and his client prejudiced. There had been no suggestion of dishonesty on his part or disloyalty to his client's interests, and we are clearly of the opinion that to have required both proceedings to be tried together would have constituted error of which both Hicks and appellant could justly complain.

Moreover, in the hearing commencing on June 1st, we find appellant taking the affirmative and first producing his evidence, as was natural if what was being tried was the application for a change of attorneys but not what was to be expected if it was a disbarment proceeding.

If the certified bill of exceptions is to be referred to, we further find that toward the close of the hearing this incident occurred: A witness called by Riordan testified to matters having no relevancy to the application for the latter's discharge or, for that matter, to the alleged misconduct upon which the order of disbarment rests. With a view to saving time, appellant suggested to the court that the subject-matter of the testimony was wholly collateral to the application for Riordan's discharge, and that unless the court deemed it material, he would refrain from cross-examination. Without advising whether or not he thought the matter relevant, the presiding judge directed appellant to proceed with the cross-examination and get through

with it, adding: "Now, you understand that you are on trial here, do you not?"

Mr. Ewell: "No, I don't, Your Honor."

The Court: "Then you had better wake up and take notice. Your are on trial here before me."

Mr. Ewell: "This is the first intimation I have had that I was on trial."

The Court: "You know it now then."

It is to be noted that even at this juncture appellant was not advised upon what complaint or charge or for what purpose he was "on trial," and there was no challenge of his statement that this was his first intimation that he was "on trial." And, indeed, the presiding judge was apparently of the view that no such information was requisite, for a little later in overruling appellant's motion to strike out irrelevant testimony he put aside appellant's reiterated complaint that this was his first intimation that he personally was involved in the proceeding, with the comment that: "Your conduct and the conduct of every attorney of this court is under continual observance of this court and may be investigated and passed upon by this court at any time without formal charges, or any charges, being placed against an attorney."

■ Without further discussing the facts, we are clearly of the opinion that until near the close of the hearing appellant had no thought that personally he was on trial for disbarment or contempt or for any other cause or purpose; and, further, that the views expressed in the foregoing comment are erroneous. It may be that an attorney can be summarily disbarred without a hearing for misconduct committed in the presence of the court. See, however, Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 355, 20 L. Ed. 646. But that question we need not decide, for no such case is here presented. It may also be admitted that the rules of practice in a disbarment proceeding are more flexible than those prevailing in criminal cases, and that a formal charge is not indispensable. Randall v. Brigham, 74 U. S. (7 Wall.) 523, 19 L. Ed. 285; Thatcher v. U. S. (C. C. A.) 212 F. 801. But that is not to say that an attorney can be disbarred without a charge in some form. No case has been brought to our attention supporting such a view, and it would seem to be out of harmony with fundamental conceptions of justice. In the two cases cited, supra, upon which the District Attorney relies, it is clearly recognized as indispensable that the subject of such a proceeding be advised of the proposed action and of the basis therefor, and that he have his "day in court." In

other words, he must in advance be informed of the purpose of the proceeding and of the grounds therefor, and be afforded a fair opportunity to interrogate the witnesses testifying against him and to produce evidence in refutation or rebuttal. These are indispensable requirements; if they are substantially met, the form or procedure by which they are complied with is of little importance. See also Ex parte Bradley, 74 U. S. (7 Wall.) 364, 19 L. Ed. 214; Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 354, 20 L. Ed. 646; Ex parte Robinson, 86 U. S. (19 Wall.) 505, 512, 22 L. Ed. 205.

■ Furthermore, upon full consideration, we are of the opinion that in no reasonable view of the evidence does it warrant the judgment. In it there is nothing to suggest that prior to the occurrence in question appellant entertained toward Riordan any feeling of ill will, or that in preparing and having Hicks sign, or in offering to file the notice, he was moved by any personal animus. His position is that in good faith he acted upon the information furnished by Mr. and Mrs. Hicks, and, under oath at the trial, they both supported him in this position and testified to facts and circumstances which, if true, would tend to the conclusion that Riordan had not dealt fairly with them. Their version of the transaction and of what Riordan did and failed to do we have already explained. Apparently they were without financial resources, and Mrs. Hicks had procured the $600 by the grace of a former husband. Appellant may very properly have considered that the service for which Riordan was employed neither involved a high degree of legal sagacity nor entailed the necessity of extended research, for in all of its aspects the statute upon which the indictment was predicated has been repeatedly construed by the courts. So, too, he may, reasonably, have been slow to believe that a fee of $1,000 would have been charged or paid for the service of merely advising Hicks to plead guilty and of assisting him in so doing and asking for a lenient sentence. In the light of these considerations, we find no rational ground for holding that appellant was grossly culpable for accepting and acting upon the representations made by Hicks and his wife, to the effect that Riordan had induced them to believe that for and with the $1,000 paid and to be paid, he would assist the former in procuring bail and would defend him on a trial of the case. In what we have thus said, no view is intimated that the agreement was in fact such as Hicks and his wife asserted it to be, or that Riordan was, in fact, unfaithful to his obligations.

That is not the point, for our present concern is only with the question whether appellant, with the light and information he had, was justified in presenting such an issue to the court and having it there tried out.

In the majority opinion in Ex parte Wall, 107 U. S. 265, the court said (page 288, 2 S. Ct. 569, 589, 27 L. Ed. 552): "Undoubtedly, the power [to disbar] is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney." And in his dissenting opinion in the same case (at p. 318 of 107 U. S., 2 S. Ct. 614), Mr. Justice Field more explicitly and perhaps more forcibly stated the rule and the reasons for it, as follows: "The profession may be to him the source of great emolument. If possessed of fair learning and ability he may reasonably expect to receive from his practice an income of several thousand dollars a year—equal to that derived from a capital of one or more hundred thousand dollars. To disbar him having such a practice is equivalent to depriving him of this capital. It would often entail poverty upon himself and destitution upon his family. Surely the tremendous power of inflicting such a punishment should never be permitted to be exercised unless absolutely necessary to protect the court and the public from one shown by the clearest legal proof to be unfit to be a member of an honorable profession."

It may be said that if the representations made by Hicks and his wife as to what occurred between them and Riordan be accepted as true, to charge the latter with misrepresentation and fraud was harsh and unnecessary. If we grant that language less offensive might more appropriately have been used, we do not think that such a consideration would justify the severity of the judgment. It is not a case of disloyalty to a client's interests, of dishonesty, or of attempting to mislead the court by deceitful practices. Upon the hypothesis suggested, at most, the offense consisted of the unnecessary use of opprobrious terms which naturally wound the sensibilities of an honorable man whether he be of the profession or of the laity. But in that respect the case is not wholly exceptional, for altogether too commonly, we regret to say, attorneys attempt to fortify averments in affidavits and pleadings by use of such terms with little, if any, justification therefor. The practice is reprehensible and should in all cases be disapproved. But it does not follow that for an isolated transgression, an attorney, who has not, upon being admonished, declined to make apology or mend his ways, should be subjected to a penalty the most severe within the power of the court to impose even for conduct inherently vicious and importing general unfitness on the part of the wrongdoer to discharge the duties which a lawyer owes to his client, the court, and the public. In Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 355, 20 L. Ed. 646, speaking for the court, Mr. Justice Field said: "And even where the matters constituting the grounds of complaint have occurred in open court, under the personal observation of the judges, the attorney should ordinarily be heard before the order of removal is made, for those matters may not be inconsistent with the absence of improper motives on his part, or may be susceptible of such explanation as would mitigate their offensive character, or he may be ready to make all proper reparation and apology. * * * To most persons who enter the profession, it is the means of support to themselves and their families. To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family. A removal from the bar should therefore never be decreed where any punishment less severe —such as reprimand, temporary suspension, or fine—would accomplish the end desired."

Laying aside all other considerations, and assuming, without deciding, that the construction put by appellant upon Riordan's conduct as it was represented to be by Hicks and his wife, and the characterization thereof as fraudulent, were unwarranted, we are of the view that censure and a required apology in court would have constituted adequate punishment.

The judgment is reversed.