**WILBUR et al. v. HOWARD.**

No. 277.

District Court, E. D. Kentucky, at Covington.

April 8, 1947.

Jesse K. Lewis, of Frankfort, for the complainants.

Sawyer A. Smith, of Covington, for the respondent.

SWINFORD, District Judge.

This case is before me on the respondent's motion to dismiss and upon final submission of the law and facts.

The proceeding is rather unusual in the course of the business of the court and may in some of its phases be novel in American jurisprudence.

The complainants are a group of persons identified in the record as ministers and others, residents of the 16th Judicial District (Kenton County, Kentucky). The respondent, Ulie J. Howard, is the duly elected and acting Commonwealth's Attorney of that district, an office which he has held since January 1927. The respondent is also an attorney admitted to practice in and whose name appears upon the roll of attorneys of this court.

The basis of the proceeding as alleged in the complaint is that the respondent by

the conduct of his office as Commonwealth's Attorney is morally unfit to be an attorney at law in this Federal Court and asks that the court issue a rule to show cause why his name should not be stricken from its roll of attorneys. Upon the allegations of the complaint, after hearing on the motions, the court issued the rule and the respondent came before it in response thereto, whereupon issue was joined and testimony offered by both sides.

■ The first question that arises is the right of the complainants to institute such an action. There can be no doubt of the right of a citizen to bring to the attention of the proper authority acts and doings of public officers which the citizen feels are incompatible with the duties of the office, and from which conduct the citizen or public might or does suffer undesirable consequences. In this instance the complainants adopted the practice of a formal petition filed with the Clerk in the nature of a law suit. Possibly this formal procedure was irregular and should not have been permitted to be thus filed. It may have been just as effective to have mailed the complaint or petition in the form of a letter directly to the judge or have handed it to him on the street or to have tossed it into his automobile or carriage. At any rate it was the privilege of these citizens to seek redress of their supposed wrong. If the court accepted jurisdiction and issued the rule it then became the issue of the judge upon such terms as it deemed lawful and proper. I have heretofore in this proceeding declined to issue process without the payment of cost as in any other court proceeding. I felt that was a reasonable term to impose on one seeking the aid of the court, even in a case of this character and since the court had nothing before it at the time other than the complaint.

■ As said in In re Claiborne, 1 Cir., 119 F.2d 647, 650:

"Every court which has power to admit attorneys to practice has inherent authority to disbar or discipline attorneys for unprofessional conduct. Ex parte Wall, 1883, 107 U.S. 265, 273, 2 S.Ct. 569, 27 L.Ed. 552; In re Fletcher, 1939, 71 App.D.C. 108, 107 F.2d 666, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 593, 84 L.Ed. 1011, rehearing denied, 1940, 309 U.S. 698, 60 S.Ct. 713, 84 L.Ed. 1037; Conley v. United States, 8 Cir., 1932, 59 F.2d 929; Hertz v. United States, 8 Cir., 1927, 18 F.2d 52. The proceedings for such discipline need not comply with all the formalities of process or other trial procedure. The informality by which action is taken, the charges made, or notice is given to the attorney charged with the misconduct, will not invalidate the proceedings. It is sufficient if the attorney has notice of the charges against him and an opportunity to prepare and present his defence. Ex parte Wall, supra, 107 U.S. at [page] 271, 2 S.Ct. 569, 27 L.Ed. 552; Randall v. Brigham, 1868, 7 Wall 523, 539, 19 L.Ed. 285; United States v. Parks, C.C. Colo., 1899, 93 F. 414; cf. Conley v. United States, supra, 59 F.2d at [page] 935; United States v. Hicks, 9 Cir., 1930, 37 F.2d 289, 292."

■ However, regardless of how the information may have been brought to the court the rule having issued, the cause is that of the court. In re Gilbert, 274 Ky. 187, 118 S.W.2d 535; 5 Am.Jur. 436, § 290; Randall v. Brigham, 7 Wall. 523, 540, 19 L.Ed. 285.

■ The first duty which any court owes is to keep its officers above suspicion. They should be men and women of such character and uprightness that their names will not be connected with unlawful and unsavory practices of a community. If the court is to maintain its boasted tradition of confidence in the minds of the people it must be diligent to see that those who assist in its conduct respect this ideal. Any other attitude is a breach of trust. Nothing less will satisfy. Aside from the usual ministerial officers a court is more dependent upon the attorneys who practice before it than any other single factor in the administration of justice. It cannot be lax in demanding the finest and best in the character of those who constitute that bar collectively and compose it individually.

■ Recognizing the utter dependence of the court upon the attorneys who are its officers and the consequent good or evil to the community the law gives wide latitude to a judge in determining of whom the bar

before him shall be composed. In re Claiborne, supra.

■■■ That a proceeding to strike the name of an attorney from the roll is within the proper jurisdiction of the court cannot be doubted. Ex parte Wall, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed 552; In re Spicer, 6 Cir., 126 F.2d 288. As is pointed out in the case of In re Wells, 293 Ky. 205, 168 S.W.2d 733, an attorney may not be thus disciplined for trivial causes, but the power is not limited to cases where he would be subject to indictment or civil liability.

In Randall v. Brigham, supra, we find this pertinent language:

"The authority of the court over its attorneys and counsellors is of the highest importance. They constitute a profession essential to society. Their aid is required not merely to represent suitors before the courts, but in the more difficult transactions of private life. The highest interests are placed in their hands, and confided to their management. The confidence which they receive and the responsibilities which they are obliged to assume demand not only ability of a high order, but the strictest integrity. The authority which the courts hold over them, and the qualifications required for their admission, are intended to secure those qualities."

On the question of jurisdiction, in addition to the authorities I have referred to, see also: Chreste v. Commonwealth, 178 Ky. 311, 198 S.W. 929; Booth et al. v. Fletcher, 69 App.D.C. 351, 101 F.2d 676; Duffin v. Commonwealth, 208 Ky. 452, 271 S.W. 555.

■■■ Notwithstanding the clear right of a judge to strike attorneys from the rolls of the court over which he presides, this is a judicial authority and should be exercised sparingly and only in clear cases of misconduct. As is pointedly and well said in the leading case of Ex parte Wall, supra [107 U.S. 265, 2 S.Ct. 589]:

"Undoubtedly, the power is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney. But when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly-improper persons from participation in the administration of the laws. The power to do this is a rightful one; and, when exercised in proper cases, is no violation of any constitutional provision."

While the rule should be rarely resorted to and sparingly used this is no excuse for a judge charged with the grave responsibility of administering justice to avoid applying it in a given case when the facts justify.

The record is large. More than eighty witnesses testified. The case took more than a week in the introduction of proof. It would serve no good purpose to review in detail this great mass of evidence in this opinion. Separate findings of fact are filed with the record.

The respondent, a very personable and gentle man, has served as Commonwealth's Attorney in the 16th Judicial District for more than twenty years. The record amply establishes that for the past twelve years gambling on a big scale has been carried on in his district. One of the largest gambling establishments in the middle west has proceeded to ply its trade, unmolested and unhindered. Under "wide open" conditions slot machines and hand books on race horses operated in cafes, restaurants and night clubs. According to the record from July 1, 1941, until February 9, 1942, there were more than three hundred individuals in Kenton County who paid the Federal occupational tax on slot machines. The names and addresses of those securing the licenses were published in the Kentucky Post and Kentucky Times-Star, two daily papers of a combined circulation in the county of more than twenty-five thousand. This number of persons has steadily increased each year. These machines and gambling devices are operated apparently without thought that they are law violations and judging from the attitude of some of the operators who testified with a rather resentful attitude that anyone should presume to question the right to operate them. The slot machines were for varying denominations from one cent to a dollar and played by men, women

and children. A poll of 600 school children showed that 92% of them had seen slot machines, 87% had seen them played and 42% had played them.

No effort worthy of the name to enforce the gambling laws in Kenton County has been made by the respondent for the past decade. On one occasion in 1939, through the personal efforts of the then circuit judge, 196 indictments charging gambling offenses against various individuals, were returned by the grand jury. These indictments were dismissed on motion of the respondent on the ground that the grand jury returning them had been illegally impaneled. The respondent made no further effort to re-indict the named defendants. On occasion raids by local police officer, Leslie Loud, resulted in presenting evidence to the grand jury of gambling violations against certain cafe and club owners. The indictments showed that without evidence the name of an employee had been added to the indictment. When presented in open court the charges were reduced to a misdemeanor, dismissed as to the operator, and a plea of guilty accepted from the employee, who paid a fine, all on motion of and after conference with the Commonwealth's Attorney.

According to the evidence approximately $85,000 a year is paid to the Federal Government for occupational license taxes on slot machines in Kenton County. The names and addresses of the operators have always been available in the office of the Collector of Internal Revenue at Louisville. The respondent has made no effort to secure this data. Certain persons becoming incensed at seeing small children spend their school lunch money in these slot machines located conveniently near the schools have sought action against the operators without success.

Hand books are operated equally as openly and on a very large scale with no effort at suppression or prosecution. On the whole the evidence conclusively presents a sordid picture of organized gambling with all the unsavory vice which inevitably flows from big money thus acquired. All of these conditions over a great number of years have been publicized by the three daily newspapers in blazing headlines, editorials and articles. Other periodicals have carried news and discussion of the gambling conditions in the district. At the hearing representative persons from various walks of life took the witness stand and told of seeing many and repeated violations on the main streets of the town and in various parts of the county. Lawyers, ministers, school men, housewives, business men, laborers and the night club and cafe operators themselves testified. I am aware that such conditions in a congested community are difficult to control and unlike rural towns and small cities. The Legislature of Kentucky also recognized this fact and provided for the appointment by the Commonwealth's Attorney in districts containing a city of the second class, a detective. The 16th Judicial District falls within that provision and the respondent as Commonwealth's Attorney had such a detective who under the statute had "the same powers of arrest and right to execute process as sheriffs have." KRS 69.110. The detective serving the respondent during his entire tenure was, according to his testimony, ready and willing to carry out directions given him by his employer. Very few raids or arrests of gamblers were made by this officer. He stated that he had seen no violations that he had not acted to stop or have brought to justice.

The respondent, his attorney in argument and some of the witnesses take the position that the community of Covington and Kenton County is a liberal community and the officers try to follow the will of the people. The court takes cognizance of the fact that it is a liberal community but the court refuses to accept a theory which places the population of the district in sympathy with those who ignore the laws of the State of Kentucky. On the contrary the great majority of the people in Kenton County are definitely and conscientiously opposed to these widespread practices. They are but the prey to partakers of the spoils of crime who have grown rich and influential because of the failure of the Commonwealth's Attorney to do his duty.

The respondent states that he never at any time declined to make affidavit

for a warrant or refused to listen to any complaint which was presented to him. That he stood ready and willing at all times to present witnesses before the grand jury. That if these complainants and their friends wanted the law enforced they should have made proper affidavit and complaint. This is an excuse often heard by those who lack the zeal to actually, both to the letter and in the spirit, fulfill the duties of the office to which they have been elected. It is the duty of a Commonwealth's Attorney to represent his client. He is the lawyer for the people. He has means and ways of ascertaining crime which his client has not. It is his duty to institute investigations, make inquiry of his aids and assistants, make use of his detective and investigator. In short, as the chief law officer of a district it is his job to keep down crime.

Another bit of evidence which should be mentioned is the complacency of the telephone company of which respondent was local attorney. The agencies of this utility company were used over long periods to disseminate racing results. This was not in isolated cases but on a wide scale. It might be remarked in passing that notwithstanding the shortage of telephones, even for emergency purposes, during the war, many of the cafes and places where books were made for betting on race horses had two telephones. The telephone company and their attorney, the respondent, denied knowledge of the use of the dozens of unlisted telephones. These and many other facts which I have not seen fit to enumerate lead me unhesitatingly to the conclusion that the respondent had knowledge of the conditions enumerated and deliberately permitted them to continue. By such sufferance the violators were protected from prosecution and crime was permitted to thrive and spread. Many of the things charged in the complaint have not been established, The respondent may not have accepted money or other bribes as charged. He is not a vicious and indisposed person. There is nothing to establish that he personally associates with thugs and thieves and persons of ill repute.

It is the first obligation of this court to maintain its purity and dignity by calling to account attorneys who have conducted their legal affairs in a manner inimical to the public interest. The courts above all governmental agencies have been respected and the people have entrusted to them the power to regulate the conduct of members of the bar so that public confidence shall remain inviolate. As is well said in Hatfield v. King, 184 U.S. 162, 22 S.Ct. 477, 479, 46 L.Ed. 481: "It is not enough that the doors of the temple of justice [be kept] open; it is essential that the ways of approach be kept clean."

Much of the argument of counsel for the respondent would have been more properly addressed to a tribunal dealing with disbarment or impeachment. That is not this case. This is not to disbar or impeach an attorney or a public official, but to strike his name from the roll of this court. The question is clearly determined by the case of Commonwealth, etc., v. Stump, 247 Ky. 589, 57 S.W.2d 524, 526. In that case the rule is stated that disbarment proceedings are not equivalent to impeachment proceedings. The following quotation from the opinion in the Stump case is pertinent:

"In line with the Rowe Case [Commonwealth v. Rowe, 112 Ky. 482, 66 S.W. 29] is that of Underwood v. Commonwealth, Ky., 105 S.W. 151, 32 Ky. Law Rep. 32; the respondent therein being the county attorney of Barren county at the time of the disbarment proceedings against him. In the Vermont case of Re Jones, supra, [In re Jones, 70 Vt. 71, 39 A. 1087], the respondent was at the time 'State's Attorney for the county of Rutland,' but the court did not allow that fact to interfere with or in any wise prevent it from proceeding with the disbarment proceeding preferred against him, and in disposing of that feature of the case it said: 'Notwithstanding he might be liable to impeachment, or might be rejected by the voters if a candidate for re-election, his conduct when acting in his office of attorney, and sometimes when acting in a private or other capacity, was open to investigation by this court; and if found to be such that the court, to protect itself and the public, and to keep the administration of justice pure, ought to withdraw the protection and credit under

the law which it accorded him by admitting him to the office of an attorney at law and solicitor in chancery, it is, beyond question, the right and duty of this court to deal with him as justice demands. It may suspend or disbar him.' "

"The same conclusion was reached by the Supreme Court of West Virginia in the Hays case, supra, [State v. Hays, 64 W. Va. 45, 61 S.E. 355], wherein the respondent was prosecuting attorney of Calhoun county in that state, and had accepted a bribe to not prosecute a violator of the law. During the course of the opinion the court said: 'No one will deny the power and duty of a court to strike from the roll the name of one who fails to maintain fidelity to the personal trust of a single client's interest. How much more important is the duty to exercise this power when the infidelity or misconduct relates to an attorney charged not only by the honor and oath of an attorney at the bar, but also by the dignity and oath of a public official, in an office calling for the exercise of highest qualities as an attorney! * * It is impossible to say that what one does as prosecuting attorney is not done as an attorney. It is done in his professional relation to the people, as well as in his official relation. The office of prosecuting attorney is one of the exercise of the same professional attainments and fitness as pertain to a lawyer of private clientage only. As prosecuting attorney, he was acting in his character of an attorney nevertheless.' "

It is urged by counsel for respondent that if there were the gross law violations claimed by the complainants that his client knew nothing of them. Conditions in respect to violations of the gambling laws have been portrayed to be so open that it would have been difficult for the most casual observer to avoid seeing them. The slightest vigilance on the part of this high official of the district must have revealed those conditions.

Counsel for the respondent also seeks to discredit the complainants' case by pointing out that witnesses offered by them have not been corroborated but expressly contradicted by each other on certain material points. In support of this contention the court's attention is called to In re San Miguel Gold Mining Co., D.C., 197 F. 126. This case does not state that such practice nullifies the evidence, but merely that it is subject to condemnation. To the same effect is Dravo v. Fabel, 132 U.S. 487, 10 S. Ct. 170, 171, 33 L.Ed. 421. This latter case was upon an appeal to the Supreme Court from the Pennsylvania state court and dealt with the calling of a party as if on cross-examination. The court expressly pointed out that the party calling for the cross-examination was not bound by it but "may rebut it by counter-testimony." The San Miguel Gold Mining Co. case, supra [197 F. 127], did not turn upon this point, but was decided on the fact that the evidence was "extremely uncertain and indefinite." Section 596, Carroll's Kentucky Civil Code of Practice provides that a party producing a witness may contradict him by other evidence. Section 149 of this Code provides that the adverse party may be called as any other witness.

With reference to the calling of the respondent Howard for cross-examination, Rule 43(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, expressly provides that a party may be called by the adverse party for interrogation as a witness and may contradict and impeach him, in all respects as if he had been called by the adverse party.

 I have endeavored to cover the principal points involved in the theories of both complainants and respondent, both as to law and fact. I feel that further comment is unnecessary. I fully appreciate the grave consequences of my ruling in this case. The matter has weighed heavily upon me. I am not unmindful of the many excellent qualities possessed by the respondent, both as a man and a lawyer, but it is utterly impossible to listen to this great mass of testimony of widespread, flagrant, open and notorious violations of the gambling laws in this judicial district over a long number of years and conclude that he had made more than a token effort to discharge his duty and enforce them. Such an attitude on his part proves him to be properly accused of protecting law violators. That being the inevitable conclusion from

the whole record he is unfit to be a member of the bar of this court and his name should be stricken from its rolls.

The motion to dismiss the proceeding and give judgment for the respondent, made at the conclusion of the evidence, for the complainants and at the conclusion of all the evidence, should be overruled and an order striking the name of the respondent from the roll of attorneys of this court should be entered.

Proper orders are entered as of this date.