## In re LYNCH.

Court of Appeals of Kentucky.
March 23, 1951.

David R. Castleman, Louisville, for appellant.

A. E. Funk, Atty. Gen., Squire N. Williams, Jr., Asst. Atty. Gen., for appellee.

SIMS, Justice.

The Louisville Bar Association filed its complaint against Virgil P. Lynch charging him with "personal misconduct which shows him to be lacking in honesty, probity and good demeanor and to be unworthy to continue as a licensed attorney". Specifically, it was charged that while Lynch was serving as Alcoholic Beverage Administrator for the City of Louisville in 1945, he misappropriated and embezzeled from his office sums of money belonging to the city. Lynch filed a response wherein he denied the charge. Upon a hearing, the Board of Bar Commissioners found respondent guilty and recommended his permanent disbarment. The proceeding is now before us to determine whether the Board was correct in its finding and in the penalty recommended.

The record contains some 250 pages of pleadings and proof, as well as more than 400 exhibits, hence it is patent we cannot go minutely into the evidence and exhibits without extending this opinion beyond reasonable bounds. We must be content with giving a general picture of the situation and in relating only one transaction, which we think abundantly support the finding of the Board and justify the punishment recommended.

Lynch was named Alcoholic Beverage Administrator for the City of Louisville in 1938 and served until he resigned in February 1946. His office force was small, consisting of Gilbert Lebangood, his assistant, and Miss Dorothy Stiglitz, who did general office work. Lebangood confessed that he and Lynch together worked a plan whereby they embezzeled certain of the proceeds from the office which they divided between themselves. It is appropriate here to say that Miss Stiglitz was not implicated in the dishonest arrangement between the two men and this record does not in the least reflect upon her honesty, honor or integrity.

Lebangood and Lynch were indicted for embezzelment. The former pleaded guilty, was given a term in the penitentiary which was probated, as we understand, upon his making restitution of $5385. Lebangood's permanent resignation from the Bar, because he no longer possessed the qualifications of a lawyer, appears in Re Lebangood, 308 Ky. 280, 213 S.W.2d 1011. Mr. Frank

A. Ropke, Commonwealth Attorney, testified that he settled with Lynch due to the fact Lebangood was an accomplice of Lynch and the corroborating testimony would have to be obtained from the original licenses issued throughout Louisville, which would entail a tremendous amount of work on his office, and it would take three or four days to try the case and if no conviction was had, there would be no restitution. The embezzelment indictment against Lynch was dismissed, he pleaded guilty to misfeasance in office, paid a fine of $1000 and made restitution in a substantial sum to the surety on his bond.

However, Lynch testified he neither paid nor promised to pay any part of the sum Lebangood restored, and that he is making restitution on his (Lynch's) bond under the terms of the instrument, which bound him to reimburse his surety for any sum it lost by reason of signing his bond.

Mr. A. J. Bartholomew, the present Alcoholic Beverage Administrator for the City of Louisville, testified on Oct. 13, 1949, there were then issued 1430 licenses to 1300 licensees, since several places had more than one license. These licenses were issued for a period of six months from July 1st and January 1st of each year. When licenses were issued on other dates, the licensees paid the proportionate part of the six months term the licenses ran. Thus, if a license was taken out on April 1st and that particular license cost $100, the licensee would only pay $50 for the remaining three months of the term.

The proof shows the plan under which Lebangood and Lynch worked was to charge the correct sum for the original license, which showed thereon, and date it the day it was issued. Then they would hold the duplicate of the license for a week or a month and manufacture their "duplicate", having it show the current date and the amount of license due on that particular day. Their "duplicate" was manufactured by filling in a form on a typewriter with a carbon under it. A suitable date and the amount of the license paid would correspond to the date inserted in this form. Then the real duplicate from which the copy was made, as well as the original of the manufactured duplicate, were destroyed. Therefore, their "duplicates" tallied as to dates and amounts when turned into the city. The original license served as a receipt for the licensees. As checks and cash were turned into the city as such but without itemizing them as to what particular license they paid, this scheme appeared to be perfect against detection. Their defalcations were not discovered until Mr. Bartholomew after taking office noticed his proceeds were running far ahead of the previous year with practically no increase in the number of licenses issued. Bartholomew started an investigation which uncovered the fraud perpetrated on the city.

The transaction we will discuss is known in the record as the Sam Manly license. Manly applied to Lynch for a liquor license in October 1945 and ascertained from Lynch it would cost him $121.60. He gave Lynch a check in that sum on October 30, 1945, and within a few days a license was mailed to him. The records in Lynch's office showed he signed the "duplicate" copy of this license which was dated Dec. 3, 1945; also, a receipt for this license in the sum of $57. Manly's check was previously turned over to the city and cleared through the bank on November 27th, but, as above stated, checks and cash delivered to the city did not show what license they paid, hence the city did not detect this fraud.

Lynch did not deny Manly's testimony nor did he deny signing the "duplicate" license or the receipt showing $57 was paid for the license, but he did deny receiving any part of the $64.60 embezzled on that transaction. Lynch says he signed the "duplicate" license and the receipt when they were presented by Lebangood without knowing that they were not genuine and that all he is guilty of is negligence. Under the facts presented in this record we agree with the Board that Lynch is guilty of more than negligence and is as guilty of embezzlement as is Lebangood. It is strange Lynch did not sign the true duplicate when he signed the original license if he had no connection with the fraud being perpetrated by Lebangood. Certainly, if Lebangood

alone was practicing the deception, he would not have run the risk of having Lynch discover it by presenting the manufactured duplicate and the incorrect receipt for Lynch's signature, but would have used the facsimile stamp to affix Lynch's signature on these papers. Then too, it is strange that Lynch marked the manufactured duplicate "paid Dec. 3, 1949", when he knew he personally had received Manly's check for $121.60 on October 30th.

It is earnestly insisted that Lynch is now in busines with no intention to resume the practice of law and there is no reason for disbarring him to protect the public from being over-reached and defrauded by him. The answer to that argument is that if not disbarred, Lynch could resume the practice of law at any time in the future and the public would have no protection against him. It is true the Sparks opinion, 267 Ky. 93, 101 S.W.2d 194, relied upon by Lynch, mentions that one reason for disbarring an unscrupulous or dishonest attorney is to protect the public from him. But that opinion points out another purpose for disbarment is to uphold the ideals and traditions of an honorable profession. Lynch's conduct shows he should be disbarred for both reasons, to protect the public and also to keep clean and wholesome the legal profession.

It is strenuously argued that Lynch should not be disbarred on the testimony of Lebangood, a self-confessed thief, and that we should accept Lynch's testimony over that of a felon, as was done in the disbarment proceedings in Com. ex rel. Wilson v. Steele, 252 Ky. 420, 67 S.W.2d 508. A reading of that case will show the facts there distinguish it from the instant one. Lebangood's testimony is amply corroborated here by Lynch pleading guilty to misfeasance in office and paying a $1000 fine, and in the manner Lynch handled the Manly license. We cannot agree with the argument in the excellant brief filed on behalf of Lynch that this is a case of negligence rather than of dishonest action on the part of the lawyer, as was held in Duffin v. Com., 208 Ky. 452, 271 S.W. 555. Without taking the time and space necessary to analyze the facts in the Duffin opinion and compare them with the acts of Lynch, it will suffice to say the Duffin's acts and conduct were not even similar to those of Lynch, nor anything like so culpable.

Nor can we agree with Lynch's counsel that the punishment was too severe and he should have been suspended from the practice for a year or so rather than disbarred. This record convinces us, as it did the Board, that Lynch conspired with Lebangood to, and they did, embezzle funds from the city. Therefore, disbarment of both was the proper punishment to be inflicted.

It is lastly argued that Lynch's conduct was not connected with his professional duties, and he did not plead guilty to a criminal offense in confessing a fine for misfeasance in office, which facts should be taken into consideration in fixing the punishment. It is not necessary that the misconduct of an attorney be connected with his professional acts to bring about his disbarment. 5 Am.Jur. "Attorney at Law", § 276, p. 426. As was said in Underwood v. Com., 105 S.W. 151, 32 Ky.Law Rep. 32, a certificate of good character is a prerequisite for admission to the Bar and the continuous possession of a good character is essential to continue as a member thereof. The Underwood opinion further states it is not necessary that an attorney's conduct be such as would render him liable to a criminal prosecution in order to disbar him. If his conduct, although outside his professional dealings, shows him to be unworthy of confidence, he may be disbarred.

It is ordered that the report of the Board of Bar Commissioners be, and it is hereby, confirmed, and that respondent, Virgil P. Lynch, be, and he is hereby, disbarred from the further practice of law in this Commonwealth.

MOREMEN, J., not sitting.