In re J. R. APPLEWHITE.

Court of Appeals of Kentucky.

Dec. 14, 1956.

Rehearing Denied Feb. 15, 1957.

Jo M. Ferguson, Atty. Gen., John B. Browning, Asst. Atty. Gen., for complainants.

Bernard B. Davis, Shelbyville, for respondent.

## PER CURIAM.

The Kentucky State Bar Association on April 2, 1955, filed complaint against J. R. Applewhite, a duly licensed attorney of Elizabethtown, charging him with conducting himself in an unethical manner while engaged in the practice of law in that: 1. he unlawfully and feloniously demanded of Allene Dixon in a violent manner property and information consisting of medical records in the Hardin Memorial Hospital; 2. while employed by a defendant in a criminal case he took a statement from prosecutrix by representing to her he was interested on the side of the prosecution; 3. while defending one charged with murder he attempted to contact witnesses for the Commonwealth by the subterfuge he could furnish important information to the prosecution.

On May 19, 1955, Mr. Applewhite filed answer denying these three charges. The Association filed an amended complaint on February 9, 1956, making two additional charges against him: (a) failing to account for collections; (b) issuing worthless checks. A copy of this amendment in the record is not signed as required by RCA 3.200. On April 10, 1956, and after the hearing before the trial commissioners on February 15, 1956, the Association filed a second amended complaint which recites it is filed "to conform to the evidence." This second amendment reiterates the three charges contained in the original complaint, the two charges contained in the amended complaint and then adds six additional charges: 1. Applewhite obtained or permitted Gilbert Stilwell to testify falsely; 2. prior to being admitted to the Bar, Applewhite wrongfully held himself out to be an attorney; 3. while defending Clyde Green on a murder indictment, he attempted to contact a witness for the Commonwealth on pretense of furnishing testimony harmful to Green on a new trial; 4. he failed to account for collections made for John Gordon; 5. he wrongfully represented he was a licensed real estate broker; 6. he wrongfully obtained money as such broker. Applewhite denied being guilty of any of these charges.

On a hearing before a trial committee of the Association, Applewhite was found guilty and the Board of Bar Commissioners recommended his permanent disbarment. Our task is to determine whether the finding of the trial committee is correct and whether the penalty recommended by the Board is too severe.

■ At the outset we are faced with a question of procedure. On the hearing, Mr. Applewhite represented himself, but when the matter reached us he had obtained the services of a very competent attorney to file a brief for him. This attorney in his brief raises the question that the first amended complaint was not signed as required by RCA 3.200, and the second was

filed after the hearing and Applewhite had no opportunity to defend himself against the charges made therein.

There are two answers to these contentions. First, our rule RCA 3.200, expressly provides the technical rules of pleading do not apply in this character of proceeding. Second, when the Association finished its testimony, one of the trial commissioners expressly told Mr. Applewhite he could have all the time he desired to prepare and present his evidence. Then too, at the outset of the hearing it seems that Mr. Applewhite made a motion to make the charges against him more specific, and when asked by one of the trial commissioners if he wanted to be heard on the motion, Applewhite replied, "No. It was explained by letter which was sufficient to inform me."

This is rather a large record for this character of case and as there are eleven charges of misconduct made against Applewhite, it is apparent that if we should go fully into each or discuss separately all eleven of them, this opinion would be extended beyond a reasonable length. Of necessity we must limit ourselves to giving a general picture of respondent's misconduct without going into all the charges or into details relating to the charges we do discuss.

Allene Dixon, a Negro maid employed at the hospital in Elizabethtown, testified respondent approached her in the hospital to get some records from the institution's files. Upon her refusal he warned her not to mention the matter, making a veiled threat that she might have an accident if she did. She testified he made a second trip to the hospital and offered her $25 or $50 if she would get the papers. She again refused. While she was indefinite as to the papers respondent wanted her to get, Allene was both definite and emphatic in her identification of him as the man who approached her on the subject. Respondent was just as emphatic in his denial that he saw this woman in the hospital or made such a re-quest of her, and proved her reputation for veracity was bad. The record shows she reported the matter to the hospital authorities and that the county attorney, Mr. Ordie Irwin, made an investigation which resulted in respondent being indicted on the charge of attempted bribery, but he has never been tried, due to the illness of his then attorney.

While we would hesitate to disbar respondent on Allene's testimony, yet her story of his attempting to bribe her, accompanied by implied threats, was so strongly fixed in her mind that she went before a grand jury which thought enough of her testimony to return an indictment thereon.

Edward Christian was charged with having carnal knowledge of a married woman under the age of consent. Respondent had this woman and her husband come to his office where he made a tape recording in which she detailed the facts of the crime against her. A transcript of this recording is in the record and at the beginning of it wherein respondent is telling the girl she did not have to make this recording, there appears, "Remember, I may defend him." There is some question as to whether or not the quoted words are in respondent's voice. We would not disbar him on this occurrence standing alone, because he may be correct when he says it was his voice that uttered these words, and he did not represent to this girl he was to be employed in the prosecution.

Respondent represented Clyde Green charged with the murder of one Shipp. While a motion for a new trial was pending it is charged that respondent attempted to contact Jesse Shipp, a brother of the murdered man, to disclose some evidence which would send his client Green to the death chair in the event Green was granted a new trial. Respondent denied having any connection with this highly disreputable proceeding and testified he rented his recording machine to Robert Holstein, who had been in jail with Green, and respondent merely went to the hotel in Elizabethtown

with Holstein to show him how to set up and operate the recording machine. This explanation sounds plausible until respondent stated Holstein had been in jail on charges of issuing some "cold" checks which Holstein had satisfied and that Holstein wanted to get a certain man in the hotel and take a recording in which he would admit that he and not Holstein was guilty on these check charges.

Under this record Holstein is shown to be a man of no standing and Jesse Shipp testified Holstein admitted calling him concerning this newly discovered evidence against Green and that respondent was with him, telling Holstein what to say. Holstein did not testify in this disbarment proceeding, as he could not be found. It appears to us as fantastic that Holstein after paying off and satisfying these checks and the fines against him would pay respondent $10 for the use of the recording machine in an attempt to prove another was guilty of the charge. Shipp testified Holstein was attempting to get Shipp to pay him for his testimony, which Shipp refused to do. If respondent was in any way connected with the scheme of Holstein to obtain money from Jesse Shipp on the ground that he could furnish Shipp with evidence that would send Green, respondent's client, to the death chair, in the event he was granted a new trial, then respondent should be disbarred.

Mr. Irwin, the county attorney, testified that Gilbert Stilwell admitted to him on the telephone he cut a man and then on examining trial denied such admission. Mention was made by Irwin about false swearing and after Stilwell conferred with respondent, he retracted his testimony and admitted he had told Irwin he cut the prosecuting witness. Irwin testified that respondent told him, "I couldn't let my client make that admission." Respondent denied telling Irwin this and says Irwin misunderstood him and what he said to Irwin was he (respondent) had not told his client what to testify. Stilwell was brought back from

prison and testified in this case to the effect that of his own volition he at first denied the telephone conversation with Mr. Irwin because he thought it would help his case, and respondent had not told him to testify falsely.

This charge narrows down to a question of credibility between Mr. Irwin and respondent and we are strongly inclined to believe the former.

There are charges against respondent that he made collections for a client, John Gordon, and failed to account therefor except with "cold" checks. Respondent denied the worthless checks he gave Gordon were for collections but stated they were for gas he had bought from Gordon. Then there are charges against respondent of "cold" checks sent in from West Virginia. He explained these by saying there had been stolen from his office several blank checks and a signature stamp. Then too, he had carelessly left several checks signed in blank in his office. When asked why he was paying on some of these West Virginia checks if he had not given them, respondent's reply was he had been careless in leaving signed blank checks in his office and he felt honor bound to pay them. This sounds unusually strange coming from a man who had given worthless checks to a client and who had paid for an air-conditioner for his office with a worthless check. Also, respondent testified he loaned a client, Edgar Tomlin, $500 when respondent could not pay for his air-conditioner and gasoline for his car. Tomlin had a criminal record with which respondent was familiar.

We will not lengthen this opinion by discussing the charges made against respondent that he had held himself out as an attorney before he was admitted to the bar, or that he had represented himself to be a licensed real estate broker in Louisville, when he was not. From what we have already said, it is clear respondent does not possess the high character and moral fiber required of an attorney. The law is an honorable profession and members

of the Bar must so conduct themselves that the public and the courts will not hesitate to repose trust and confidence in them. An attorney is an officer of the court and his conduct need not be such as to subject him to a criminal prosecution before he can be disbarred. If it is such as shows he is unfit to discharge the high duties of a court officer and that he is not worthy of public trust, he may be disbarred, and should be. Underwood v. Com., 105 S.W. 151, 32 Ky.Law Rep. 32; In re Lynch, Ky., 238 S.W.2d 118.

One cannot read this record without reaching the conclusion it shows a scheme and pattern of conduct upon the part of respondent both professional and private, as to justify the finding of the Board of Bar Commissioners that he should forever be barred from the practice of law. It is therefore ordered the recommendation of the Board be confirmed and respondent, J. R. Applewhite, is hereby disbarred from the further practice of law in this State.