**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**George T. RORRER III, Respondent.**

**No. 2006–SC–000603–KB.**

Supreme Court of Kentucky.

May 24, 2007.

## OPINION AND ORDER

The Board of Governors of the Kentucky Bar Association has recommended to this Court that George T. Rorrer III, whose bar roster address is 500 W. Jefferson Street, Suite 2000; Louisville, Kentucky 40202, be permanently disbarred from the practice of law. We granted review in order to determine whether disbarment is the appropriate penalty for Rorrer's misconduct. After examining the parties' briefs and the applicable law, we conclude that it is.

In December 1999, Rorrer was indicted in the United States District Court for the Western District of Kentucky for the offense of conspiracy to conduct a criminal financial transaction affecting foreign and interstate commerce, an offense commonly called money laundering. According to the indictment, between September 1998 and July 1999, Rorrer and John Caporale, Rorrer's client, executed

a false construction contract calling for the payment of $34,000 to or on behalf of JOHN E. CAPORALE for remodeling work to be done, when in fact JOHN E. CAPORALE, aided and abetted by GEORGE T. RORRER, his attorney, made a cash loan of $29,000 to another to be repaid in a single payment of $34,000, which cash loan involved the proceeds of a specified unlawful activity, that is distribution of controlled substances in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds in the amount of $29,000,

represented the proceeds of some form of unlawful activity.' [1]

In July 2000, a jury found Rorrer guilty of conspiracy to commit the crime of money laundering as charged in the indictment. Thus, in September 2000, we issued an order temporarily suspending Rorrer's license to practice law.[2] In January 2001, Rorrer was sentenced to thirty-seven months' imprisonment. Rorrer appealed, and the United States filed a cross-appeal claiming that Rorrer's sentence should have been increased because he used his special skills as an attorney to further the conspiracy.

In May 2003, the United States Court of Appeals for the Sixth Circuit affirmed Rorrer's conviction and otherwise denied his claims for relief, except that the court found that (1) the record did not clearly state whether the trial court had afforded Rorrer an opportunity to allocute before imposition of sentence, (2) Rorrer's sentence should have been subject to enhancement due to Rorrer's use of a special skill as a lawyer in furthering the criminal purpose of the conspiracy,[3] and (3) the trial court erred when it reduced Rorrer's sentence for being a minor participant in the conspiracy.[4] Thus, Rorrer's conviction was affirmed; but the case was remanded

---

1. *See also Kentucky Bar Association v. Rorrer,* 28 S.W.3d 308 (Ky.2000).

2. *Id.*

3. *See United States v. Robertson,* 67 Fed.Appx. 257, 273 (6th Cir.2003) ("We find that the district court acted contrary to the manifest weight of the evidence in holding that Rorrer used no special skill. It is apparent that lawyering is a special skill, and Rorrer used that skill in accomplishing this transaction when he brought the parties together, recommended that they launder the money via a false construction contract, drew up that contract, and recommended to Hawkins that she deposit the money in small amounts to conceal the transaction from the IRS.").

4. *Id.* at 272 ("The court's conclusion appears to lack a foundation, however, given that Rorrer, far from being less culpable in the money laundering than the other participants, was in fact the central figure in the operation: he instigated the transaction by connecting Hawkins and Caporale; he facilitated it by writing a phony contract; and he offered his own office space to complete the transaction. All that Caporale had to do was to walk in with the money, and sign on the dotted line. We conclude that the district court clearly erred in granting a two-level decrease for being a minimal participant.").

to the trial court with instructions to hold a new sentencing hearing.

In November 2003, the trial court resentenced Rorrer to fifty-seven months' imprisonment. Rorrer again appealed his sentence to the Sixth Circuit. In June 2004, while Rorrer's second appeal was pending before the Sixth Circuit, the KBA authorized the Inquiry Commission to initiate an investigation of Rorrer due to his criminal convictions. Rorrer was served with a copy of that Inquiry Commission complaint while incarcerated. Rorrer did not respond to the complaint, even after the Office of Bar Counsel sent him a letter warning him of the possible consequences if he failed to respond.

In October 2004, while Rorrer's second appeal was pending, the Inquiry Commission issued a three-count charge against Rorrer.

- Count I charged Rorrer with violating [Kentucky Supreme Court Rule] SCR 3.130(8.3)(13), which states that a lawyer commits professional misconduct if he "[c]ommit[s] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects";

- Count II charged Rorrer with violating SCR 3.130(8.3)(c), which provides that a lawyer commits professional misconduct if he "[e]ngage[s] in conduct involving dishonesty, fraud, deceit[,] or misrepresentation"; and

- Count III charged Rorrer with violating SCR 3.130(8.1)(b), which states that a lawyer shall not "knowingly fail to respond to a lawful demand for

information from an admissions or disciplinary authority[.]"

While still in jail, Rorrer filed a response to the charge in November 2004. In his response, Rorrer admitted that he had been convicted of conspiracy to commit money laundering in federal court. But he denied violating SCR 3.130(8.3)(b) and (e); and he denied having failed to respond to a lawful demand for information from the KBA because his conviction was "still under appeal and, therefore, not final pursuant to 18 U.S.C. § 3742 and *United States v. Clark*, 110 F.3d 15 (6th Cir.1997) ... To do so [i.e., respond to the charge] might possibly force Rorrer to waive his Fifth Amendment rights against self-incrimination under the United States Constitution."

Eventually, a trial commissioner was appointed who, in September 2005, conducted an evidentiary hearing on the charges against Rorrer. In October 2005, the commissioner issued a report recommending that Rorrer be found guilty of all three counts and, consequently, disbarred. Both Rorrer and the KBA filed separate notices of appeal.[5]

Meanwhile, in December 2005, the Sixth Circuit again vacated Rorrer's sentence due to the United States Supreme Court's recent decision invalidating the previously mandatory nature of the federal sentencing guidelines.[6] The record before us does not show what, if any, subsequent developments transpired in Rorrer's federal criminal case.

In May 2006, the Board heard oral arguments on the appeals from the trial commissioner's recommendations. In August

---

5. Apparently, the Office of Bar Counsel appealed "for the purpose of permitting the Board [of Bar Governors] to review the entire case, inasmuch as it [the Office of Bar Counsel] agreed with the Trial Commissioner's ruling."

6. *See United States v. Rorrer*, 161 Fed.Appx. 518 (6th Cir.2005) (relying upon *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).

2006, the Board issued its findings of fact, conclusions of law, and recommendation, in which it adopted, by a vote of 11–3, the trial commissioner's report and recommendations.

In December 2006, a majority of this Court voted to review the Board's decision under SCR 3.370(9). Both Rorrer and the KBA filed briefs outlining their respective positions. After examining those briefs and the applicable law, we conclude that disbarment is a proper punishment for Rorrer's serious professional misconduct.

■ The crux of this case is not whether Rorrer violated SCR 3.130(8.3)(b). It is uncontested that Rorrer was convicted of the felony offense of conspiracy to commit money laundering in federal court. Although much legal wrangling has ensued over Rorrer's sentence, Rorrer's conviction was upheld on appeal. Thus, it is clear that Rorrer was convicted of a criminal offense which "reflect[ed] adversely on [his] ... honesty, trustworthiness[,] or fitness as a lawyer[.]" [7]

■ Furthermore, Rorrer's contention that he cannot be disciplined because the KBA failed to prove the exact role he played in the money-laundering conspiracy is without merit. Unlike the prosecution in a criminal case, the Kentucky Bar Association is not an agency whose purpose is to prosecute criminal offenses. Attorney discipline matters are not fresh opportunities for attorneys who have been convicted of criminal offenses to re-litigate the merits of their criminal convictions. [8] Accordingly, in an attorney discipline matter, the KBA is not required to prove conclusively the precise and detailed facts that led to the attorney's criminal conviction. To the contrary, the mere fact that an attorney, such as Rorrer, has been convicted of a felony offense, such as conspiracy to launder money, "forecloses further inquiry into the issue of respondent's guilt or innocence of the [criminal] offense." [9] So we conclude that Rorrer is clearly guilty of violating SCR 3.130(8.3)(b), based upon his conviction in the United States District Court for the Western District of Kentucky for the offense of conspiracy to launder money.

■ Likewise, we conclude that Rorrer is also guilty of violating SCR 3.130(8.3)(c). We utterly reject Rorrer's argument that his conviction for conspiracy to launder drug money is not a crime involving dishonesty. To the contrary, we conclude such a conviction is clear evidence that Rorrer engaged in conduct "involving dishonesty, fraud, deceit[,] or misrepresentation." [10] According to the Sixth Circuit, Rorrer instigated the actions leading to the money laundering conspiracy and used his skills as an attorney to draft a fictitious

7. SCR 3.130(8.3)(b).

8. *Cf. Marsh v. Kentucky Bar Ass'n*, 28 S.W.3d 859, 860 (Ky.2000) ("The Kentucky Bar Association does not object to the Movant's motion to resign, but does object to the terms of the disbarment. The Kentucky Bar Association requests that the order accepting the resignation state that the Movant committed the unethical and unprofessional acts as charged by the Inquiry Tribunal. Marsh, however, does not acknowledge his guilt, as he asserts in his motion that he 'has no knowledge or memory of the criminal action.' Nonetheless, **Marsh was convicted beyond a reasonable doubt by a jury. Such a standard of proof is much higher than that of the civil standard, preponderance of the evidence. As such, his criminal conviction is conclusive proof of his guilt for the purposes of our proceedings.**") (emphasis added).

9. *Kentucky State Bar Ass'n v. Lester*, 437 S.W.2d 958, 959 (Ky.1968). *See also Kentucky Bar Ass'n v. Horn*, 4 S.W.3d 135, 137 (Ky.1999).

10. SCR 3.130(8.3)(c).

contract to further that conspiracy.[11] Obviously, Rorrer's criminal conduct inherently involved dishonesty, fraud, and/or deceit.

Rorrer poses a more difficult question on his conviction for failing to respond to the KBA's request for information. Although his criminal conviction had been finalized, Rorrer was in the process of appealing his sentence during much of the attorney discipline process. And Rorrer's response to the charges against him alleged that he did not answer the initial complaint because he wanted to exercise his Fifth Amendment right to avoid self-incrimination. But Rorrer did not raise this self-incrimination argument until after the Inquiry Commission had issued the charges.

■ Obviously, each attorney is obligated to respond to the KBA's lawful request for information involved in a disciplinary investigation.[12] But the Fifth Amendment guarantees each person a right to avoid self-incrimination.[13] In certain cases, therefore, there is a conflict between an attorney's obligation under SCR 3.130(8.1)(b) to respond to a lawful request

for information in an attorney discipline matter and the attorney's constitutional right to avoid self-incrimination.

Ideally, Rorrer should have responded to the Inquiry Commission's initial complaint by simply stating that he was not able to provide the requested information because he was asserting his Fifth Amendment privilege against self-incrimination. Such a response should have precluded a later charge that his non-cooperation was a violation of SCR 3.130(8.1)(b). But Rorrer said nothing.

■ Generally, a person's Fifth Amendment right to avoid self-incrimination is not self-executing, meaning it must be affirmatively claimed.[14] Of course, there are exceptions to that general rule, such as in situations where the invocation of the privilege would lead to potential penalties sufficient to force self-incrimination.[15] Although we question whether the KBA's request for materials regarding an allegation of misconduct at a time where Rorrer's conviction was final and only his period of incarceration remained in flux falls within the "classic penalty situation"[16] exception, we need not definitively rule on

**11.** *See Robertson,* 67 Fed.Appx. at 272–73 ("Rorrer, far from being less culpable in the money laundering than the other participants, was in fact the central figure in the operation: he instigated the transaction by connecting Hawkins and Caporale; he facilitated it by writing a phony contract; and he offered his own office space to complete the transaction..... It is apparent that lawyering is a special skill, and Rorrer used that skill in accomplishing this transaction when he brought the parties together, recommended that they launder the money via a false construction contract, drew up that contract, and recommended to Hawkins that she deposit the money in small amounts to conceal the transaction from the IRS.").

**12.** *See* SCR 3.130(8.1)(b).

**13.** *See also* Kentucky Const. § 11 ("In all criminal prosecutions the accused ... cannot

be compelled to give evidence against himself[.]'").

**14.** *See generally* 81 Am.Jur.2d *Witnesses* § 112 (2007).

**15.** *See, e.g., State v. Fuller,* 276 Mont. 155, 915 P.2d 809, 812 (1996) ("There is an exception, however, to the general rule that a defendant must affirmatively invoke the privilege in order to enjoy its protections. Failure to invoke the privilege does not preclude the benefit if the defendant is placed in a situation where he is not free to admit, deny, or refuse to answer.") (*citing Minnesota v. Murphy,* 465 U.S. 420, 429, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)) (internal quotation marks omitted).

**16.** *Minnesota,* 465 U.S. at 435, 104 S.Ct. 1136.

that issue since Rorrer's criminal misconduct standing alone warrants disbarment, regardless of whether his failure to respond to the complaint is, under the unique facts of this case, a violation of SCR 3.130(8.1)(b).[17]

■ Thus, we now turn to the heart of this matter: what sanction is appropriate for Rorrer's criminal misconduct? Both Rorrer and the KBA discuss prior precedent, which each contends should guide our decision. Obviously, each case involving attorney discipline is factually unique and, thus, may be distinguished from the case at hand. However, our precedent is crystal clear: we treat criminal financial misconduct by attorneys very seriously; and we have previously found that disbarment was appropriate for *numerous* attor-

neys who had committed criminal offenses involving dishonesty in financial matters.[18] Thus, Rorrer's argument to the contrary notwithstanding, disbarment is not a disproportionate penalty for his criminal misconduct.

Though he continues to maintain his innocence, it is uncontested that Rorrer was convicted of a serious felony offense in federal court and that his conviction was affirmed on appeal. Furthermore, Rorrer's criminal conduct involved using his professional skills to further a conspiracy involving his client and the laundering, or attempted laundering, of drug money. Obviously, such serious criminal conduct brings dishonor to both Rorrer and to the entire bench and bar.[19] Thus, we believe

**17.** Such a conclusion is in accordance with the trial commissioner's report, in which the commissioner found that Rorrer did violate SCR 3.130(8.1)(b), but did not "sanction Mr. Rorrer for failing to testify in a way which might be contrary to his right against self-incrimination while the sentencing portion of his case is still pending. (However, it should be noted that at no time at the hearing did Mr. Rorrer attempt to invoke his right against self-incrimination.)"

**18.** *See, e.g., Kentucky Bar Ass'n v. Tanner,* 152 S.W.3d 875 (Ky.2005) (permanent disbarment for attorney convicted of embezzlement); *Kentucky Bar Ass'n v. Layton,* 97 S.W.3d 452 (Ky.2003) (permanent disbarment for attorney convicted of theft by failure to make required disposition involving wrongful conversion of funds from attorney's Master Commissioner's account); *Caudill v. Kentucky Bar Ass'n,* 155 S.W.3d 725 (Ky. 2005) (accepting attorney's resignation under terms of permanent disbarment when attorney pleaded guilty to embezzlement and theft by failure to make required disposition); *Kentucky Bar Ass'n v. Steiner,* 157 S.W.3d 209 (Ky.2005) (disbarring attorney who misappropriated client funds for his own use, despite attorney's lack of previous disciplinary history and claim of mental illness); *Dickey v. Kentucky Bar Ass'n,* 98 S.W.3d 864 (Ky.2003) (approving attorney's motion to withdraw under terms of permanent disbarment when at-

torney had pleaded guilty to conspiracy to commit securities fraud); *Kentucky Bar Ass'n v. Matthews,* 131 S.W.3d 744 (Ky.2004) (permanently disbarring attorney convicted of, *inter alia,* conspiracy to defraud a financial institution).

**19.** *See Kentucky State Bar Ass'n v. Vincent,* 537 S.W.2d 171, 173 (Ky.1976) (**"It is beyond cavil that an attorney** who is convicted of an offense involving moral turpitude, or who is convicted of an intentional and serious misdemeanor, or **who is convicted of a felony, is guilty of such conduct as is calculated to bring the bench and bar into disrepute.** Respondent was permitted, without limitation, to fully indulge himself in the introduction of evidence to support his position in his effort to build up and make realistic his claim of extenuating circumstances. He is an officer of the court [ *(Kentucky State Bar Association v. Taylor,* 482 S.W.2d 574 (Ky.1972)) ], and it is his duty—yes, even more so, it is his responsibility—to conduct his personal and professional life in a manner as to be above reproach. Is this too much to ask of any attorney? We think not. Other than one's own confidante, no person occupies such close relationship to the general public as do the members of the legal profession. It is the attorney to whom the intimacies of family relations are confided; it is the attorney who is entrusted with advising as to the manage-

that Rorrer's criminal misconduct is sufficiently serious as to warrant permanent disbarment.[20]

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Respondent, George T. Rorrer III, is permanently disbarred from the practice of law;

(2) In accordance with SCR 3.450, Rorrer is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $1,501.16, for which execution may issue from this Court upon finality of this Opinion and Order; and

(3) Pursuant to SCR 3.390, Rorrer shall, within ten (10) days from the entry of this Opinion and Order, notify all clients, in writing, of his inability to represent them; notify, in writing, all courts in which he has matters pending of his disbarment from the practice of law; and furnish copies of all letters of notice to the Executive Director of the Kentucky Bar Association. Furthermore, to the extent possible, Rorrer shall immediately cancel and cease any advertising activities in which he is engaged.

All sitting. All concur.

ENTERED: May 24, 2007.

/s/ Joseph E. Lambert
Chief Justice

---

ment and disposition of the family estate; it is the attorney who is entrusted with the protection of our constitutional and statutory rights. Such a burden resting upon the members of the legal profession must not be taken lightly.") (Emphasis added.).

20. Rorrer contends that in the event of disbarment, he is entitled to avail himself of the provisions of former SCR 3.520, which governed reinstatement in case of disbarment. Rorrer contends that SCR 3.520, which was deleted in October 1998, applies to him because his alleged misconduct occurred in September 1998, prior to the rule's deletion. However, the indictment charges that Rorrer's misconduct occurred from September 1998 through July 1999; and Rorrer has pointed to nothing in the record to conclu-

sively show that all of his misconduct occurred prior to SCR 3.520's deletion. Furthermore, the rule was deleted over one year prior to Rorrer's indictment, nearly two years prior to Rorrer's conviction, nearly five years prior to the issuance of the Sixth Circuit's opinion affirming Rorrer's conviction, approximately six years prior to the issuance of the charge against Rorrer by the Inquiry Commission, and over eight years prior to the issuance of this opinion and order. Thus, we strongly question whether Rorrer is eligible for reinstatement pursuant to the long-deleted SCR 3.520. However, we express no definitive answer on this subject as we will not offer a hypothetical ruling on an as-yet unfilled hypothetical motion.