**KENTUCKY BAR ASSOCIATION,**
**Movant,**

**v.**

**Juliette Alane HOUSE, Respondent.**

**No. 2012–SC–000183–KB.**

Supreme Court of Kentucky.

June 21, 2012.

## OPINION AND ORDER

Juliette Alane House [1] was admitted to practice law in Kentucky in 1989.[2] In December 2010, the Inquiry Commission filed a seven-count Charge against House for violating SCR 3.130–1.1, 3.130–1.3, 3.130–1.4(b), 3.130–1.16(d), 3.130–8.1(b), 3.130–8.4(b), and 3.130–8.4(c).[3] The Charge relates to misconduct in House's representation of Kevin Weeks.

After a disciplinary hearing on the matter, the trial commissioner found, by a preponderance of the evidence, that House violated the rules of professional conduct as charged in all seven counts and recommended that House be permanently disbarred.

House did not file a notice of appeal of the trial commissioner's report. Because the trial commissioner's findings and conclusions are supported by the record and the law, we do not elect to review the decision. And we adopt the order and recommendation of the trial commissioner.[4] We agree that House violated the rules of professional conduct and that permanent disbarment is warranted.

### I.  KBA FILE NO. 18527.

Kevin Weeks retained House to represent him in his Indiana criminal trial. House was not licensed in Indiana or temporarily admitted under Indiana Supreme Court Rule 3,[5] but the trial court apparent-

---

1. Kentucky Bar Association (KBA) Member No. 82893; bar roster address, P.O. Box 168, Crestwood, Kentucky 40014.

2. She is also admitted to practice law in Colorado and Utah.

3. The events that gave rise to this matter occurred both before and after the July 2009 amendments to the Kentucky Rules of Professional Conduct went into effect. So we apply the Kentucky Rules of Professional Conduct in effect after July 2009.

4. SCR 3.370(9).

5. Indiana Supreme Court Rule 3 provides that Indiana courts "may permit a member of the bar of another state or territory of the United States, or the District of Columbia, not admitted pursuant to Rule 21, to appear in a particular case or proceeding, only if the court before which the attorney wishes to appear or in the case of an administrative proceeding, the **Supreme Court,** determines that there is good cause for such appearance and" various requirements are met, including that a member of the local Bar appears in the matter and agrees to act as co-counsel, a registration fee is paid, and a copy of a Verified Petition for Temporary Admission is submitted.

ly permitted House to represent Weeks in the trial under Indiana's prior pro hac vice rule. Weeks was convicted of a criminal offense and sentenced to thirty years' imprisonment. Weeks and his father, Bob Weeks, hired House to appeal the criminal conviction. Bob Weeks agreed to pay House $20,000, plus half the fees and costs for the appeal.

In July 2008, House filed a Notice of Appeal in Weeks's case, which was rejected by the Indiana Court of Appeals because the filing fee was not paid and because House was not licensed to practice law in Indiana. At the evidentiary hearing before the trial commissioner, House admitted that she knew the Notice of Appeal was rejected. She asserted that she filed a second Notice of Appeal, but there is no indication that the Indiana Court of Appeals received this filing. House also admitted that she did not comply with the Indiana Supreme Court Rule that requires the temporary admission of out-of-state attorneys.

In November 2008, House emailed Bob Weeks, indicating that the Indiana Court of Appeals returned her material because she was not admitted to practice law in Indiana. But she stated that she was "filing all of the necessary paperwork to accomplish this task." House told Bob Weeks that in the meantime, Weeks needed to file his appeal pro se. In the same email, House requested that the $250 appeal fee and $185 admission fee "be paid immediately." Bob Weeks complied and issued a check to House for $435.

House prepared and filed for Weeks a motion to proceed *in forma pauperis* in his appeal and a motion for an extension of time to file his Notice of Appeal, which the Indiana Court of Appeals granted. And, in December 2008, Bob Weeks paid House

$9,785 as the first installment of the agreed-upon $20,000 fee, with a deduction for half the court fees and temporary admission fees.[6]

A notice of completion of the trial transcript was filed with the Indiana Court of Appeals in March 2009. And, in July 2009, the Indiana Court of Appeals issued an Order dismissing Weeks's appeal, with prejudice, because Weeks did not file a Case Summary, Appellant's Brief, or any other filings to prosecute the appeal.

House knew that Weeks's appeal would be subject to dismissal if an appellate brief was not filed within thirty days of the transcript certification. And House asserted that she prepared a 162–page appellate brief on Weeks's behalf but that the Indiana Court of Appeals failed to accept it for filing. But she never presented this brief at the evidentiary hearing, and she presented no proof that the Indiana appellate court ever received and rejected the document. House also claimed that she did not receive notice that the transcript was complete or that Weeks's appeal was dismissed because Weeks was technically proceeding pro se, and House was no longer counsel of record.

In November 2009, four months after the Indiana Court of Appeals dismissed Weeks's appeal, with prejudice, House told Bob Weeks that she had filed the appellate brief. She indicated that she had not heard whether the Court of Appeals wanted oral argument but that the Attorney General's Office "still ha[d] a few weeks before they file their brief. Then I may file a rebuttal." House also asked "when [she] would [receive] the final payment." Bob Weeks requested that House send him a copy of the appeal brief, but he never received it.

---

6. At the evidentiary hearing, House claimed that this check, including the court fees, was payment for House's trial work, not for work she conducted on Weeks's appeal.

In December 2009, House wrote to Weeks informing him that the brief was submitted to the Court of Appeals. She asserted that because she was not admitted to practice law in Indiana, she was doing the work and submitting it through an Indiana Public Defender.

Without knowing that his son's appeal had been dismissed several months earlier, Bob Weeks paid House the remaining $10,000 of the agreed-upon fee. But when Bob Weeks requested a copy of the appellate brief filed by the Attorney General from the Clerk of Court for the Indiana Court of Appeals, the clerk informed him that the case was dismissed and no briefs were filed by either side. Bob Weeks contacted House to express his concern, and House assured him that she filed a brief and did "exactly as [she] stated." In February 2010, Bob Weeks requested a refund of the $20,000 fee from House.

House informed Weeks in April 2010 that the Indiana Court of Appeals dismissed his appeal. She told Weeks that "the Attorney General's office in Indiana will not recognize me as your attorney" and that her mailings to that office were returned to her. She also stated that the Indiana Court of Appeals accepted documents from her "but has held them pending some arbitrary determination about your representation." And House admitted that "[a]lthough the public defender agreed to be the middle person for the brief, that never happened." But she claimed that she was preparing post-conviction motions that she would forward to Weeks for him to sign on his own behalf as an unrepresented litigant.

In June 2010, Weeks wrote to House, complaining that House's April 2010 letter was the first time she informed him that his appeal had been dismissed nearly a year before. He reminded House that he

had not received any post-conviction motions from her. Weeks requested a detailed list of House's work on his appeal. In July 2010, after receiving no response to his letter, Weeks dismissed House as his attorney and requested a refund of all the fees she received in connection with his appeal.

House has never refunded any of the money paid to her for representation in Kevin Weeks's criminal appeal, including the temporary admission and appeal filing fees, which House never paid to the Indiana Court of Appeals.

Bob Weeks filed a Bar complaint against House. The KBA forwarded a copy of the complaint to House by certified mail, which was returned unclaimed. The complaint was served on House by a sheriff in April 2010. When House did not file a response within the time allowed, a reminder letter was served on her by a sheriff in July 2010. House never filed a response to the complaint filed by Bob Weeks.

After a disciplinary hearing on the matter, at which House was present and represented herself, the KBA filed a Post–Hearing Memorandum. When House failed to file a memorandum in support of her position, the KBA requested that the matter be submitted for ruling, to which House did not respond. The trial commissioner found that House violated the rules of professional conduct as charged in all seven counts and determined that the serious nature of House's misconduct and damage to House's clients warrant permanent disbarment.

## II. TRIAL COMMISSIONER'S FINDINGS AND RECOMMENDATION.

██ The trial commissioner made the following conclusions of law. House violated SCR 3.130–1.1 [7] by failing to provide

---

**7.** SCR 3.130–1.1 states, "A lawyer shall provide competent representation to a client.

competent representation to Weeks. After accepting representation of Weeks in an appeal of his criminal conviction in Indiana, House failed to apply for temporary admission before the Indiana Court of Appeals, as required by Indiana Supreme Court Rule 3. And House's alleged attempts to file the appellate brief through an undisclosed public defender further indicates her lack of knowledge and experience with the Indiana appellate process. House's conduct of the appeal reflected an absence of the required "legal knowledge, skill, thoroughness[,] and preparation necessary for the representation" and resulted in the dismissal of Weeks's appeal, with prejudice.

The trial commissioner found that House violated SCR 3.130–1.3 [8] by failing to act with reasonable diligence and promptness in her representation of Weeks. House did not take the necessary steps to apply for temporary admission before the Indiana Court of Appeals and did not file a timely appellate brief.

■ House also violated SCR 3.130–1.4(b) [9] by providing Weeks and his father with erroneous or insufficient information about her admission in Indiana and the progress of the appeal. House failed to inform Weeks that his appeal was dismissed, thereby depriving Weeks the opportunity to seek competent counsel and make informed decisions regarding his criminal appeal.

■ House violated SCR 3.130–1.16(d) [10] by failing to return the unearned portion of the fee paid by Bob Weeks after the termination of House's representation of Weeks. Bob Weeks paid House $19,785, plus $435 in filing and admission fees that House admits were not paid to the Indiana court. House did not earn the $20,220 paid to her. Despite House's insistence that she prepared and filed an appellate brief, she was unable to produce the brief as evidence in her disciplinary proceeding.

House violated SCR 3.130–8.1(b) [11] by failing to respond to the complaint filed against her by Bob Weeks. She provided no explanation for her failure to respond.

■ House violated SCR 3.130–8.4(b) [12] by committing a criminal act that reflects adversely on her honesty, trustworthiness, and fitness as a lawyer in oth-

Competent representation requires the legal knowledge, skill, thoroughness[,] and preparation reasonably necessary for the representation."

8. SCR 3.130–1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

9. 3.130–1.4(b) reads, "A lawyer shall promptly comply with reasonable requests for information."

10. SCR 3.130–1.16(d) states, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled[,] and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

11. SCR 3.130–8.1(b) provides, "An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

12. SCR 3.130–8.4(b) reads, "It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness[,] or fitness as a lawyer in other respects."

er respects. House committed theft by deception under KRS 514.040($l$)(c), which provides,

> A person is guilty of theft by deception when the person obtains property or services of another by deception with intent to deprive the person thereof. A person deceives when the person intentionally:
>
> (c) Fails to correct a false impression which the deceiver previously created or reinforced or which the deceiver knows to be influencing another to whom the person stands in a fiduciary or confidential relationship[.]

By deliberately deceiving Weeks and his father about the progress of Weeks's appeal and by not informing them of the dismissal of the appeal, House obtained the additional $10,000 in attorney's fees. She told Bob Weeks that the brief was filed and requested final payment, even though she never filed the brief and the case was dismissed months prior to her request for final payment. Although House has not been prosecuted or convicted for violating KRS 514.040, "a prosecution or conviction is not a prerequisite for finding a violation of the rules of professional conduct, which need only be proven by a preponderance of the evidence."[13]

For the reasons discussed above, House also violated SCR 3.130–8.4(c)[14] by engaging in conduct involving dishonesty, fraud, and misrepresentation.

## III. ADOPTION OF RECOMMENDATION AND ORDER.

▌ House's misconduct caused considerable damage to Kevin Weeks, who lost his right to appeal his criminal conviction following the Indiana court's dismissal of the appeal, with prejudice. And Weeks's father paid House $20,220, which he has not recovered, to represent Weeks on appeal. The trial commissioner noted that House's misconduct relating to her failure to provide competent and diligent representation of her client, without more, would not warrant such an extreme sanction. But her continuing misrepresentations to her clients and her demand for additional payment of fees several months after her client's appeal was dismissed, with prejudice, are significant aggravating factors.

House's unprofessional conduct in this case is aggravated by her history of prior misconduct and discipline, which includes a 90–day suspension in 2000[15] and private admonitions in 2007 and 2009. Two of these instances of prior discipline stem from House's failure to diligently represent her clients and keep her clients informed about their cases. And House's failure to provide any reasonable explanation for her actions, failure to return the fees and expenses received from Weeks and his father, and her lack of remorse or understanding of her misconduct further warrant permanent disbarment.

In light of the aggravating factors and lack of mitigating, factors surrounding House's misconduct and recognizing that we have imposed permanent disbarment in similar cases,[16] we adopt the trial commissioner's report and recommendation to

---

13. *Kentucky Bar Ass'n v. Glidewell*, 348 S.W.3d 759, 761–62 (Ky.2011) (citation and internal quotations omitted).

14. SCR 3.130–8.4(c) states, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]"

15. *Kentucky Bar Ass'n v. House*, 34 S.W.3d 373 (Ky.2000).

16. *See e.g., Kentucky Bar Ass'n v. Smith*, 283 S.W.3d 738 (Ky.2009) (permanent disbarment warranted due to pattern of misconduct in which attorney would accept representation, accept an advance payment of a fee, fail to perform the legal duties to bring the cases to a conclusion, fail to communicate with the clients, fail to be truthful with the clients, fail to return unearned fees, and fail to return files); *Kentucky Bar Ass'n v. Sivalls*, 165 S.W.3d 137 (Ky.2005) (permanent disbarment

permanently disbar House. For the foregoing reasons, the Court ORDERS:

1) Juliette Alane House, KBA Member No. 82893, is guilty of all charges alleged in KBA File No. 18527;

2) House is hereby permanently disbarred from the practice of law in Kentucky, commencing on the date of entry of this order;

3) Under SCR 3.450, House is ordered to pay all costs associated with this disciplinary proceeding, in the amount of $2,514.34, for which execution may issue from this Court upon finality of this Opinion and Order; and

4) Under SCR 3.390, within ten days of the entry of this order, House is ordered to notify all clients, in writing, of her inability to represent them; notify all courts in which she has matters pending of her disbarment from the practice of law in Kentucky; and furnish copies of said letters to the Office of Bar Counsel. And to the extent possible, House shall immediately cancel any pending advertisements and shall terminate any advertising activity.

All sitting. All concur.

ENTERED: June 21, 2012.

/s/ John D. Minton, Jr.
    Chief Justice

imposed for attorney's lack of diligence, failure to communicate with clients, committing criminal acts and engaging in fraud, dishonesty, and misrepresentation).