**KENTUCKY BAR ASSOCIATION,**
Movant

v.

**Gary Lynn GOBLE, Respondent.**

**No. 2013–SC–000719–KB.**

Supreme Court of Kentucky.

March 20, 2014.

*OPINION AND ORDER*

The Board of Governors (the Board) of the Kentucky Bar Association (KBA) recommends this Court suspend Gary Lynn Goble (Goble) from the practice of law for five years. Finding sufficient cause to do so, we adopt the Board's recommendations, with conditions. Goble, whose KBA number is 81030 and whose bar address is 4314 Green Pine Court, Louisville, Kentucky 40220 was admitted to the practice of law in the Commonwealth of Kentucky on April 26, 1985. Goble was automatically suspended from the practice of law pursuant to Supreme Court Rule (SCR) 3.166 on September 6, 2012. This is the only disciplinary proceeding in which Goble has been involved.

## I. BACKGROUND.

Pursuant to SCR 3.160 and 3.190, the Inquiry Commission issued a complaint and subsequently issued charges accusing Goble of violating SCR 3.130–8.4(c)–engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation;" and SCR 3.130–8.4(b)–committing a "criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The charges arose from actions Goble took while acting as business manager and fiduciary of the 401(k) retirement plan for Stephens' Drugs, Inc.

## A. SCR 3.1308.4(c) Charges.

Between January 5, 2007, and May 1, 2010, Goble and Stephens' Drugs withheld $16,284.39 from employees' pay for deposit in the company's 401(k) retirement plan. Goble, as fiduciary for the retirement plan, failed to deposit those funds in the retirement plan's account. The Secretary of the United States Department of Labor filed suit against Goble, Stephens' Drugs, and the company's retirement plan. The parties settled the suit by way of a consent judgment and order which found Goble and Stephens' Drugs jointly and severally liable to the retirement plan for $16,284.39 in principal and $3,478.23 in lost opportunity costs. Goble and Stephens' Drugs were ordered to pay the total amount, $19,762.62, to the retirement plan by December 1, 2011, and both were enjoined from acting as fiduciaries for any employee benefit plan subject to ERISA. It appears from the record that Goble and/or Stephens' Drugs have complied with the court's order.

## B. SCR 3.130–8.4(b) Charges.

On October 11, 2011, a Jefferson County grand jury indicted Goble for theft by failure to make required disposition of property over $10,000, a Class C felony; theft by failure to make required disposition of property over $500 but less than $10,000, a Class D felony; and theft of labor over $500 but less than $10,000, a Class D felony. The. first two counts arose from Goble's handling of the retirement plan funds. The third count arose from Goble's issuance of pay checks totaling $5,226.28 to an employee when Goble knew the account did not have sufficient funds to make payment on the checks.

On July 5, 2012, Goble entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two counts of failure to make required disposition of property of over $500 but less than $10,000 [1] and one count of theft of labor over $500 but less than $10,000. On September 6, 2012, the court entered judgment sentencing Goble to two years' imprisonment on each count to run concurrently. The court diverted that sentence for three years. Goble's counsel immediately advised the KBA of Goble's guilty plea. We note that it appears from the record that Goble made restitution.

## C. The Board's Findings of Fact, Conclusions of Law, and Recommendations.

The Board, after summarizing the above, found that Goble was properly served with the Commission's complaint, to which he filed a response admitting that he entered the guilty plea and the consent judgment. The Board also found that Goble alluded "to the fact that he had filed bankruptcy seeking a discharge of debt owed to identical creditors who presumably served as the complaining witnesses in the criminal action." Finally, the Board found that the Commission had forwarded the formal charge to Goble on July 23, 2013, and Goble accepted delivery on July 25, 2013. Goble has not responded to the formal charge.

Based on its findings, the Board, by a vote of 20–0, recommended that Goble be found guilty on both counts. Considering that Goble had no prior history of discipline and that the charges did not arise from the practice of law or an attorney-client relationship, the Board recommended, by a vote of 15–5, that Goble be suspended from the practice of law for five years.

---

1. As part of the plea agreement, the Commonwealth amended the theft by failure to make required disposition of property over $10,000 to the lesser charge.

The KBA filed a notice of review of the Board's recommendation pursuant to SCR 3.370(7). In its brief supporting the notice of review, the KBA argued that permanent disbarment, rather than the five-year suspension recommended by the Board, is the appropriate sanction. We discuss the KBA's argument in more detail below. Goble has paid the costs assessed by the Board, but he has not filed a response to the KBA's notice of review and brief.

## II. ANALYSIS.

■ Goble has not contested the accuracy of the charges and there is more than sufficient evidence to support the Board's findings of fact. Therefore, we accept the Board's recommendation and find Goble guilty of violating both SCR 3.130–8.4(b) and SCR 3.130–8.4(c).

As to the appropriate punishment, we note, as did the KBA that "our precedent is crystal clear: we treat criminal financial misconduct by attorneys very seriously; and we have previously found that disbarment was appropriate for *numerous* attorneys who had committed criminal offenses involving dishonesty in financial matters." *Kentucky Bar Ass'n v. Rorrer,* 222 S.W.3d 223, 229 (Ky.2007) (emphasis in original). The KBA argues that the Board should have focused on Goble's specific misconduct, not on whether Goble was engaged in the practice of law when the misconduct occurred. According to the KBA, if the Board had focused on what Goble's misconduct said about his moral character, it should have recommended permanent disbarment. The KBA then cited to a number of cases involving financial misconduct by an attorney that resulted in permanent disbarment.

In *Fitzgerald v. Kentucky Bar Ass'n,* 381 S.W.3d 318 (Ky.2012), Fitzgerald, who was acting as an escrow agent for a disabled person, was convicted of theft by failure to make disposition of an amount between $500 and $10,000. This Court granted Fitzgerald's motion for an order of permanent disbarment. In *Kentucky Bar Ass'n v. Carmichael,* 244 S.W.3d 111, 112 (Ky.2008), this Court permanently disbarred Carmichael—the Commonwealth's attorney for Pulaski, Rockcastle, and Lincoln Counties—after he was found guilty of trying to extort $50,000 to $100,000 from a criminal defendant. In *Caudill v. Kentucky Bar Ass'n,* 155 S.W.3d 725 (Ky. 2005), we agreed to permit Caudill to resign from the bar under terms of permanent disbarment after he pled guilty to federal embezzlement charges and state charges of theft by failure to make required disposition. It is unclear from the opinion in what capacity Caudill was acting when he committed his crimes, or how much money was involved. In *Kentucky Bar Ass'n v. Tanner,* 152 S.W.3d 875 (Ky. 2005), we permanently disbarred Tanner, who never responded to disciplinary charges related to his embezzling from his employer, a bank. In *Kentucky Bar Ass'n v. Matthews,* 131 S.W.3d 744, 745 (Ky. 2004), we permanently disbarred Matthews, who never responded to disciplinary charges related to his conviction on several counts of bank fraud. It is unclear in what capacity Matthews was acting when he committed his crimes, or how much money was involved. In *Dickey v. Kentucky Bar Ass'n,* 98 S.W.3d 864 (Ky.2003), we permitted Dickey to resign under terms of permanent disbarment after he pled guilty to conspiracy to commit securities fraud. As with Matthews and Caudill, it is unclear in what capacity Dickey was acting when he committed his crimes, or how much money was involved.

In *Kentucky Bar Ass'n v. Layton,* 97 S.W.3d 452, 453 (Ky.2003), we permanently disbarred Layton, then Master Commissioner of Jessamine and Garrard counties,

who pled guilty to eight counts of theft by failure to make required disposition of property involving the theft of nearly $400,000 from the Master Commissioner's account. In *Kentucky State Bar Ass'n v. Scott*, 409 S.W.2d 293, 294 (Ky.1966), Scott, who was an insurance adjuster at the time, pled guilty to charges of grand larceny related to kick-backs he received from companies that made repairs for his employer's insureds. We determined that his crime was one of moral turpitude and that permanent disbarment was appropriate. In *In re Shumate*, 382 S.W.2d 405 (Ky. 1964), this Court's predecessor permanently disbarred Shumate after he was found guilty of embezzling funds that came into his hands as a bankruptcy trustee. We note that Shumate apparently reimbursed the amount taken, $4,700; however, despite his conviction, Shumate failed to take responsibility for his actions. In *In re Lynch*, 238 S.W.2d 118 (Ky.1951), our predecessor Court permanently disbarred Lynch who, acting in his capacity as alcoholic beverage administrator, pled guilty to misfeasance in office related to funds embezzled he from the City of Louisville. We note that one of the arguments made by Lynch was that he was not engaged in the practice of law and had no intention of practicing law in the future. However, the Court rejected this argument noting that, absent permanent disbarment, nothing would prevent Lynch from practicing law in the future.

The KBA cited three cases involving permanent disbarment with no criminal convictions. In *Kentucky Bar Ass'n v. Mayer*, 392 S.W.3d 922, 924 (Ky.2013), we permanently disbarred Mayer after the KBA found that he had converted a client's taken settlement funds for his own use and had misled the client as to the status of her claim. In *Kentucky Bar Ass'n v. House*, 366 S.W.3d 927, 929 (Ky.2012), we permanently disbarred House based on the KBA's findings that House had accepted nearly $20,000 to represent a client in a criminal appeal, had done nothing to perfect the appeal, and had misled her client as to the status of the appeal. In *Kentucky Bar Ass'n v. Steiner*, 157 S.W.3d 209, 215 (Ky.2005), we permanently disbarred Steiner after he admitted to taking for his personal use nearly $100,000 in funds he had collected on behalf of clients. We note that Steiner argued for mitigation due to alleged mental illness and a lack of any prior disciplinary proceedings.

Finally, the KBA cites to two cases involving attorneys taking "relatively small" amounts of money but who were nonetheless disbarred. In *Kentucky Bar Ass'n v. Christian*, 320 S.W.3d 687, 688 (Ky.2010), Christian, as executor of an estate, paid himself $13,000 in fees that he did not earn. He also had three prior private admonitions, had taken no steps to reimburse the estate, and had not cooperated with his successor executrix. In *Kentucky Bar Ass'n v. Kessen*, 311 S.W.3d 249 (Ky. 2010) Kessen, who was practicing in Ohio at the time, converted for his own use $7,650.00 in funds that belonged to the law firm where he was employed. He resigned from the Ohio bar. When the KBA learned of his resignation, it sought an explanation from Kessen. He responded and admitted converting the funds. The KBA initiated disciplinary proceedings but Kessen did not participate. Based on Kessen's admitted conversion of funds meant for his law firm, the Board recommended permanent disbarment. We agreed with that recommendation.

We note two additional cases that resulted in permanent disbarment following criminal misconduct. In *Kentucky Bar Ass'n v. Sivalls*, 165 S.W.3d 137 (Ky.2005), we permanently disbarred Sivalls who was charged with sixty-nine counts of misconduct, one of which arose from his convic-

tion of Theft by Failure to Make Required Disposition of funds related to conversion of a check made payable to her client. We note that Sivalls did not make any appearance to contest or answer the charges. In *King v. Kentucky Bar Ass'n*, 162 S.W.3d 462 (Ky.2005), we permanently disbarred former Master Commissioner King after he pled guilty to one hundred and thirty-two felony counts of failure to make required disposition of property related to his theft of more than $300,000 from the Master Commissioner's account.

However, we have also recently imposed less severe penalties on attorneys who engaged in dishonesty involving financial matters. In *Kentucky Bar Ass'n v. Hawkins*, 260 S.W.3d 337, 338 (Ky.2008), Hawkins took several settlement checks made payable to his client and converted them to his own use. We suspended Hawkins from the practice of law for five years. In *Elliott v. Kentucky Bar Ass'n*, 341 S.W.3d 119, 120 (Ky.2011), we suspended Elliott from the practice of law for two years after he pled guilty to issuing a check for $8,124.95 when he knew there were not sufficient funds in the account. In *Kentucky Bar Ass'n v. Hammond*, 241 S.W.3d 310, 316 (Ky.2007), we suspended Hammond's license to practice law for five years when, among other things, he failed to return unearned retainer fees to four clients.

■ Having reviewed the preceding cases, we agree with the Board's recommendation of a five-year suspension for three reasons. First, unlike the majority of the attorneys noted above who were permanently disbarred, Goble's transgressions did not arise out of the practice of law or involve client funds. Second, although not insubstantial, the amount of money involved in Goble's transgressions was substantially less than the amounts generally involved in the permanent dis-

barment cases. Third, unlike some of the permanently disbarred attorneys, Goble has not had any prior disciplinary actions; has apparently made restitution; and has apparently taken responsibility for his actions.

Therefore, we adopt the Board's recommendation of a five-year suspension. However, because it is unclear if Goble has made restitution, he must prove that he has done so when, and if, he seeks reinstatement to the practice of law.

ACCORDINGLY, IT IS ORDERED THAT:

1. Respondent, Gary Lynn Goble, KBA Member No. 81030, is suspended from the practice of law in Kentucky for a period of five years. The period of suspension shall commence on the date of his temporary suspension, September 6, 2012, and shall continue until he is reinstated to the practice of law by Order of this Court pursuant to SCR 3.510.

2. Notwithstanding the five-year period mentioned above, Goble shall not file an application for reinstatement if there is any outstanding claim or judgment originating from the criminal and civil charges mentioned herein.

3. If he has not already done so, pursuant to SCR 3.390, Goble shall promptly take all reasonable steps to protect the interests of his clients, including, within ten days after the issuance of this order, notifying by letter all clients of his inability to represent them and of the necessity and urgency of promptly retaining new counsel and notifying all courts or other tribunals in which Goble has matters pending. Goble shall simultaneously provide a copy of all such letters of notification to the Office of Bar Counsel;

4. If he has not already done so, pursuant to SCR 3.390, Goble shall immediately cancel any pending advertisements; shall terminate any advertising activity for the duration of the term of suspension; and shall not allow his name to be used by a law firm in any manner until he is reinstated;

5. Pursuant to SCR 3.390, Goble shall not, during the term of suspension, accept new clients or collect unearned fees; and

6. In accordance with SCR 3.450, Goble is directed to pay the costs of this action in the amount of $333.71, for which execution may issue from this Court upon finality of this Opinion and Order.

CUNNINGHAM, KELLER, NOBLE, SCOTT, and VENTERS, JJ., concur. MINTON, C.J., dissents by separate opinion, in which ABRAMSON, J. joins.

MINTON, C.J., Dissenting.

I must respectfully dissent from the majority's opinion because I believe that the financial misconduct that resulted in Goble's three felony convictions evinces a breach of trust that warrants permanent disbarment from the practice of law.

I base my dissent on two primary grounds. First, the majority opinion formulates an unjustifiable distinction between an attorney who steals money from a client and an attorney who steals money from a nonclient. Second, the majority opinion misapprehends the weight of our case law that supports permanent disbar-

ment. I will address each of these grounds in turn.

Seemingly as an attempt to mitigate the seriousness of Goble's misconduct, the majority emphasizes the misconduct occurred outside of any attorney-client relationship. I find this argument unavailing. As a preliminary matter, the distinction between stealing money from a client and stealing money from a non-client is simply a distinction without a difference. Of course, an attorney-client relationship involves a level of trust and candor that is likely absent in an attorney's nonprofessional relationships. But when an individual—client or otherwise—entrusts an attorney with a financial matter and that attorney betrays that trust, are we prepared to say that the attorney's misconduct is less detrimental to the legal profession because of the absence of the attorney-client relationship? I am not.

An attorney who commits financial misconduct casts a pall over the profession as a whole, regardless of the victim's status. We should not allow our profession to absorb such a negative perception based simply on the lack of a legally recognized relationship. Society has higher expectations of the legal profession, and we are charged with maintaining the basis for that expectation.

Our own rules demand more than what the majority opinion provides. SCR 3.130–8.4(c) defines *professional misconduct for a lawyer* as "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation."[2] Notably, there is no limita-

---

**2.** And, similarly, SCR 3.130–8.4(b) provides that "commit[ing] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" constitutes misconduct. Under this rule, we have previously disciplined lawyers for DUI convictions, bank fraud, assault, and other similar crimes wholly unrelated to the attorney-client relationship. *See, e.g., Gordiner v. Kentucky Bar Ass'n,* 408 S.W.3d 78 (Ky.2013); *King v. Kentucky Bar Ass'n,* 377 S.W.3d 541 (Ky.2012); *Kentucky Bar Ass'n v. Matthews,* 131 S.W.3d 744 (Ky.2004).

tion to the attorney-client relationship. And the Preamble to our Rules of Professional Conduct states, "[T]here are Rules that apply to lawyers who are not active in the practice of law or to practicing lawyers *even when they are acting in a nonprofessional capacity.* For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation."[3] Our rules clearly do not contemplate viewing the absence of an attorney-client relationship as a mitigating circumstance; nor should they. Attorneys are sworn representatives of the integrity of the judicial system, and this representation does not begin or end with an attorney-client relationship. The facts of this case are clear: Goble, acting as a fiduciary,[4] illegally misappropriated funds. The absence of an attorney-client relationship does not make Goble's conduct any more acceptable or any less damaging to the integrity of the bar.

Finally, I must confess that I find the majority's conclusion unpersuasive in light of its discussion of nearly four pages of clear precedent to the contrary. Our case law holds that we do not take lightly financial misconduct. The reasoning behind this stance is solid: the entrustment of one's finances to an attorney is a very strong bond, requiring the utmost loyalty and professionalism by the attorney in return. Stealing from retirement funds, estates, or damage recoveries has the very real possibility of leaving individuals and families bereft of financial security. As I mentioned above, the absence of an attorney-client relationship is not a mitigating

circumstance nor is it a justification for departing from our sound precedent.

Accordingly, I would uphold both our rules and our precedent and permanently disbar Goble from the practice of law in the Commonwealth.

ABRAMSON, J., joins.

---

**3.** SCR 3.130 Preamble IV (emphasis added).

**4.** I would hold that a fiduciary relationship is on par with an attorney-client relationship. *Fiduciary* is defined as "holding, held, or founded in trust or confidence; of, having to do with, or involving a confidence or trust;

resting upon public confidence for value of currency." WEBSTER'S NEW INT'L DICTIONARY (3d ed.1993). Surely, a violation of the fiduciary relationship should not be mitigated simply because there was technically no attorney-client relationship.